In the Matter of the Judicial Settlement of the Accounts of JULIA L. JAMES (now BUTTERFIELD), as Executrix, etc.

Where a will is the subject of construction the intention of the testator, as disclosed by the will, not a general rule of construction, is to govern when they come in conflict.

A meritorious consideration is not sufficient to sustain an executory covenant, executed by a husband to his wife.

Where, therefore, a husband executed and delivered two bonds to his wife as a gift, *held*, that they were not enforcible after the death of the husband against his estate.

The bonds were secured by mortgages upon lands in another state. An action of foreclosure was brought in that state during the lifetime of the husband, in which he and his grantees were made parties defendant, and process was served upon them out of the state; he did not appear. A judgment of foreclosure and sale was entered in which the amount due upon the bonds was fixed. After the death of the husband the mortgaged premises were sold under the judgment. Upon settlement of the accounts of the widow as executrix of her husband's will, she presented a claim against the estate for the amount of the bonds less the amount realized on the sale. *Held*, that she was not entitled to an allowance of the claim; but that while said judgment had no effect to create a personal liability upon the bonds, it was conclusive as to the ownership of the mortgages and the right of the mortgagee to have the mortgaged premises sold and the proceeds applied upon the amount represented by the bonds.

Upon the day of the death of the husband, and while he was in fact dying, a clerk of the firm of which he was a member, who held a power of attorney, authorized to sign checks for the firm, was requested by a messenger from the dying man's home to draw two checks for account of the wife; this the clerk did. The messenger received and caused the

checks to be cashed, and deposited the money to the individual credit of the wife. *Held*, that proof of these facts did not justify a finding that the checks were delivered by the husband's authority, or that the authority of the clerk under the power had been validly called into exercise.

By the will of the deceased husband he gave to his wife "for her sole use, enjoyment and benefit, during her life, without restraint, deduction or interference in any manner whatsoever," one-half of the income of all his property, "of every kind," during her life; the remainder of the income, and the estate itself, after the death of the wife, he gave to his "legal heirs," subject to all taxes and charges against the estate; they were enjoined against attempting to interfere with the "full enjoyment, use, management and direction and disposition" of the estate. The wife was appointed sole executrix, with the direction that no bond or surety should be required of her, and she was authorized, in her discretion, to sell any portion of the property, if necessary, to pay the debts of the testator. At the time the will was made the testator had no children or other descendants; he owned, at the time of his death, stocks of certain railroad construction companies. Two of said companies constructed railroads, and upon their sale received land grants in payment; another received in part payment for a road constructed by it a certificate of indebtedness secured by a mortgage. *Held* (BARTLETT, J., dissenting), that dividends received by the executrix upon said stocks were, under the circumstances, properly treated as income; that the intention of the testator was not to create a technical trust, but that his property should remain in specie for his widow's benefit, and subject to her uncontrolled management, and she was entitled to her share of whatever came into the estate from the property in the form in which he left it.

The other member of testator's firm died a few days before him. In an action brought by a firm creditor for the protection and distribution of the firm assets a receiver was appointed, who collected interest and dividends upon certain bonds and stocks. A judgment was rendered in said action settling the receiver's accounts and directing him to deliver over the assets to the widow, as executrix of the surviving partner. *Held*, that the judgment was not open to attack upon the accounting of the executrix, and that she was entitled to treat as income the money collected by the receiver as dividends and interest and paid over to her.

Reported below, 78 Hun, 121.

(Argued April 9, 1895; decided May 21, 1895.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made the second Monday of May, 1894, which modified, and affirmed, as modified, a decree of the surrogate of Putnam county settling the account of Julia L. Butterfield,

as executrix of the last will and testament of Frederick P.
James, deceased.

Upon the accounting of the executrix of Mr. James' will,
various objections were filed on the part of his heirs and next
of kin to the accounts. He left the following will; which
had been dictated by him a few years before his decease.

"I, F. P. James, of Philipstown, Putnam county, New
York, being of sound mind, declare this my last will and tes-
tament, revoking all former wills and codicils. I give and
bequeath to my beloved wife Julia, for her sole use, enjoy-
ment and benefit during her life, without restraint, deduction
or interference in any manner whatsoever, as follows:

"*First* — One-half of the income of all my property of
every kind of which I may die possessed.

"*Second* — The use, enjoyment, rental and occupation of
my two residences, one known as " Cragside " in Cold Spring
and Philipstown, New York, and the other known as No. 400
Fifth avenue, New York city.

"*Third* — I give, devise and bequeath absolutely to my
said wife all the household furniture, pictures, plate, books,
ornaments, horses, carriages, farm implements and property of
every description in or upon or appertaining in any manner
to the two houses and residences aforesaid. The said devises
and bequests to my said wife to be in lieu of dower and right
of dower. I give, devise and bequeath to my legal heirs the
remainder of the income from my property during the life of
my wife after the payment and discharge of all taxes, assess-
ments and charges, interest and obligation against my estate,
except as hereinafter provided, in case of interference. I
give; devise and bequeath to my legal heirs, except as herein
provided otherwise, the reversion and ownership of all my
estate and property after the death of my wife, with the
reservation, exception and direction, that in the event of any
of my legal heirs making any attempt directly or indirectly,
in any manner or form to interfere with or restrain in any
manner my beloved wife from full enjoyment, use, manage-
ment and direction and disposition of the property and income

of my estate, as herein devised, then and in that event such one of my legal heirs as shall do or perform or aid or abet the performance of such an act, or cause the same to be done, shall be forever debarred from any part, parcel, interest or ownership, or inheritance to any of my property, and be excluded from sharing in the same, and the share that would otherwise have gone to him or her shall be divided among the remaining heirs according to law. I authorize and direct my executrix in her discretion to sell and convey such portion of my property as may be requisite or necessary to pay and discharge my just debts and obligations.

"I constitute and appoint my wife Julia L. James, my sole executrix and direct that no bond, obligation or surety be required from her."

Mr. James left no parents, or descendants surviving him. In his lifetime he had been the senior member of the banking and brokerage firm of F. P. James and Company. There were no written articles of co-partnership between him and his partner Horace S. Taylor, and the finding is that the latter had one-fifth interest in the profits and was to bear one-fifth of the losses of the firm. Mr. Taylor predeceased the testator by a few days. The executrix and the next of kin have appealed from the order of the General Term, which modified the surrogate's decree and, as modified, affirmed it.

Further facts appear in the opinion.

*William W. Goodrich* and *William P. Quin* for executrix, appellant. The portions of the decree by which substantial justice is obtained will be affirmed. (Code Civ. Pro. §§ 1337, 1338, 2545, 2586; Redf. Surr. Pr. [4th ed.] 892; *In re Ross*, 87 N. Y. 514; *In re Cottrell*, 95 id. 329; *In re Keleman*, 57 Hun, 165; 126 N. Y. 73; *Loder* v. *Whelpley*, 111 id. 239; *In re Chamberlain*, 46 N. Y. S. R. 841; *In re Williams*, Id. 791; *Doolittle* v. *Stone*, 136 N. Y. 613; *Hurlburt* v. *Hurlburt*, 128 id. 420; *Porter* v. *Gardner*, 60 Hun, 571; *Hyde* v. *Kitchen*, 69 id. 280; *Bliss* v. *West*, 58 id. 71; *Sweet* v. *Northrup*, 12 Wkly. Dig. 377; *Brown* v. *Champlin*, 66 N. Y.

214; *Marsh* v. *Brown*, 18 Hun, 319; *Jackson* v. *T. T. S. R. R. Co.*, 88 N. Y. 520; *Lewis* v. *Duane*, 69 Hun, 28; 141 N. Y. 302; *Kelly* v. *Burroughs*, 102 id. 93; *Foote* v. *Valentine*, 48 Hun, 475; *In re Coleman*, 111 N. Y. 220; *Rosseau* v. *Bleau*, 131 id. 177; *Smith* v. *Crego*, 54 Hun, 22; *In re Sprague*, 125 N. Y. 732; *West* v. *Van Tuyl*, 119 id. 620; *Patterson* v. *Robinson*, 116 id. 193; *Donovan* v. *Clark*, 138 id. 631; *Turner* v. *Weston*, 133 id. 650; *Steubing* v. *N. Y. E. R. R. Co.*, 138 id. 658; *Healy* v. *Clark*, 120 id. 642; *Daniels* v. *Smith*, 130 id. 696; *Burger* v. *Burger*, 111 id. 523, 525; *Adams* v. *Fitzpatrick*, 125 id. 124; *Berger* v. *Varrelmann*, 127 id. 281; *Butler* v. *Green*, 65 Hun, 99; *Torrence* v. *T. N. Bank*, 70 Hun, 44; *Hosford* v. *Nichols*, 1 Paige Ch. 220, 226; *Goddard* v. *Sawyer*, 9 Allen, 78; *In re Huss*, 126 N. Y. 537; *Wines* v. *Mayor, etc.*, 70 id. 613.) The surrogate's allowance of Mrs. Butterfield's claim and decree for its payment should have been affirmed by the General Term. (Code Civ. Pro. §§ 942, 1317, 2739; *Teel* v. *Yost*, 128 N. Y. 387; *Dunstan* v. *Campbell*, 138 id. 70; *Porter* v. *Gardner*, 60 Hun, 571; *Robert* v. *Good*, 36 N. Y. 408; *Goddard* v. *Sawyer*, 9 Allen, 78, 79; *Hostard* v. *Nichols*, 1 Paige Ch. 220, 226; *Mooney* v. *U. P. R. R. Co.*, 60 Iowa, 347; *F. Ins. Co.* v. *Highsmith*, 44 id. 330, 333; *Baker* v. *Jamison*, 73 id. 698, 701; *Lazier* v. *Westcott*, 26 N. Y. 146; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 id. 27; *Hewitt* v. *Rankin*, 41 Iowa, 35; *Penny-backer* v. *Leavy*, 65 id. 220; *Bucklin* v. *Bucklin*, 1 Keyes, 145; 1 Abb. Ct. App. Dec. 42; Thomas on Mort. § 113; 4 Kent's Comm. [13th ed.] 465; 1 Pars. on Cont. [7th ed.] 459; 1 Bouvier's Law Dict. [15th ed.] 375; *Van Amburgh* v. *Kramer*, 16 Hun, 205; *Fuller* v. *Artman*, 69 id. 546; *Beard* v. *Nuthall*, 1 Vern. 427; *Isenhardt* v. *Brown*, 2 Edw. Ch. 341; 2 R. S. 137, § 84; *Hunt* v. *Johnson*, 44 N. Y. 27; *Brown* v. *Austin*, 35 Barb. 341; *Cushman* v. *Addison*, 52 N. Y. 628; *Woodward* v. *James*, 115 id. 346; Whart. on Const. § 495; Story on Const. §§ 515, 537, 543; *Bolen* v. *Bolen*, 44 Hun, 362;

*Ennis* v. *Ennis*, 48 Hun, 15 ; *Richmond* v. *Richmond*, 78 N. Y. 354; *Cardee* v. *Lord*, 2 id. 269 ; *Diefendorf* v. *Diefendorf*, 132 id. 100 ; *Spencer* v. *Carr*, 45 id. 406 ; *Bliss* v. *West*, 58 Hun, 71; *Power* v. *Lester*, 23 N. Y. 527 ; *Gillig* v. *Maass*, 28 id. 191 ; *Van Amburgh* v. *Kramer*, 16 Hun, 205 ; *Wilbur* v. *Warren*, 104 N. Y. 192; *Riley* v. *Mayer*, 96 id. 331; *Osborne* v. *Moss*, 7 Johns. 161; *Waterbury* v. *Westervelt*, 9 N. Y. 598; *N. Y. L. Ins. Co.* v. *Aitkin*, 125 id. 660; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, Id. 263; *Wright* v. *Chapin*, 74 Hun, 54; *Leach* v. *Linde*, 70 id. 145 ; *Neilley* v. *Neilley*, 89 N. Y. 352, 356 ; *In re Rider*, 38 N. Y. S. R. 29 ; *Kyle* v. *Kyle, Executor*, 67 N. Y. 400; *Garlock* v. *Vanderwort*, 128 id. 374; *Burkhalter* v. *Norton*, 3 Dem. 610 ; *Guernsey* v. *Miller*, 80 N. Y. 181 ; *Peyser* v. *Myers*, 135 id. 599 ; *O'Brien* v. *Young*, 95 id. 429 ; *Loos* v. *Wilkinson*, 113 id. 485, 502 ; *Bennett* v. *Cook*, 2 Hun, 526.) There was no foundation laid for the claim of contestants that the executrix should be charged with the value of the Lyon county lands, less the amount of taxes. (*Burger* v. *Burger*, 111 N. Y. 523 ; *Martin* v. *Hodges*, 45 Hun, 38.) The testator's intent as to the management of his estate should control the decision of the questions involved in these appeals. (*Woodward* v. *James*, 115 N. Y. 346 ; *Galle* v. *Tode*, 74 Hun, 542; *Crim* v. *Starkweather*, 136 N. Y. 635; *Fanon* v. *Mason*, 76 Hun, 408 ; *Adler* v. *M. E. R. Co.*, 138 N. Y. 173 ; *In re Hart*, 60 Hun, 516 ; Code Civ. Pro. §§ 721, 723 ; *Boughton* v. *Flint*, 74 N. Y. 477; *Bainbridge* v. *McCullough*, 1 Hun, 488 ; *Bellinger* v. *Potter*, 36 N. Y. S. R. 601 ; *In re Ryalls*, 74 Hun, 205 ; 80 id. 459.) The payment to Mrs. James of $2,500 by the check of the firm of F. P. James & Co. on the day of her husband's death cannot be questioned, and the General Term's modification of the surrogate's decree in that respect was erroneous. It neither constitutes a set-off nor counterclaim against the debt due to her from the estate nor grounds for surcharging her account. (*Bank of N. Y.* v. *Vanderhost*, 32 N. Y. 553.) The suit of *Young* v. *James et al.*, in which the receiver was appointed, was brought

by a creditor of the firm, and was necessary for the preservation of the estate's interest in the assets of F. P. James & Co. (*Fisher* v. *Banta*, 66 N. Y. 468.) The division of the stocks and bonds between the executrix and Jansen was made on a proper basis. (*King* v. *Leighton*, 100 N. Y. 386; *Baldozier* v. *Haynes*, 57 Iowa, 683; *Houston* v. *Lane*, 62 id. 291; *Kyne* v. *Kyne*, 48 id. 21; *Sully* v. *Nebergall*, 30 id. 214; *Watrous* v. *Winn*, 37 id. 72.) All the dividends of the Hastings and Dakota Railway Company were income, and should not be treated as principal in the determination of any of the questions involved in this accounting. (*Clarkson* v. *Clarkson*, 18 Barb. 646; *Towle* v. *Forney*, 14 N. Y. 423.) The executrix was properly credited with the sums paid to her attorneys and counsel, and to which the appellants objected. (*Fowler* v. *Lockwood*, 3 Redf. 465; *Gilman* v. *Gilman*, 6 T. & C. 211; 63 N. Y. 41.) No question is before the court as to the securities sold or those on hand on May 29, 1890. (*Weston* v. *Ward*, 4 Redf. 415.) The executrix should not be charged in this accounting for any of the remaining personal property. (*O'Connor* v. *Gifford*, 117 N. Y. 275.) The settlement of the executrix's accounts can be had from time to time as circumstances permit. (*In re Tilden*, 98 N. Y. 434; Code Civ. Pro. §§ 2514, 2722–2724, 2739–2743.) The surrogate's allowance of $2,985 to "Harlan J. Woodward, a contestant, or to Frank E. Smith, his guardian *ad litem*," was unauthorized by law and unwaranted by the evidence. The General Term improperly affirmed it at $2,500. (*In re Budlong*, 100 N. Y. 203; *In re Holden*, 126 id. 589–596; *In re Wilson*, 103 id. 374; *McKuskie* v. *Hendrickson*, 128 id. 555; *Foster* v. *Kane*, 1 Dem. 67; *Rigg* v. *Crugg*, 26 Hun, 89; *H. F. Ins. Co.* v. *G. F. Ins. Co.*, 138 N. Y. 252.) The executrix was right in not paying the mortgages on the Rockingham apartment house. (*Woodward* v. *James*, 115 N. Y. 352; 1 R. S. 749.) The General Term erred in not granting the motion of the executrix for the dismissal of the appeals taken by Charles D. Chase, Cornelia A. James, Julia C. Prescott, and by the executors of

Edward D. James and Ella E. James, individually. (*Alexander* v. *Alexander*, 104 N. Y. 643.)

*Frank E. Smith* for Henry A. James and others, appellants. The dividends in question are capital and not income. (*Woodward* v. *James*, 115 N. Y. 346.) The retention of the stocks in question was unlawful and a violation of duty on the part of the executrix. (Williams on Exrs. 1717–1719; *Lacey* v. *Davis*, 4 Redf. 402; *Hughes* v. *Empson*, 22 Beav. 181; *Howe* v. *Earl of Dartmouth*, 7 Ves. 137; 2 W. & T. L. C. [6th Eng. ed.] 321; *Morgan* v. *Morgan*, 14 Beav. 72; *Thornton* v. *Ellis*, 15 id. 193; *Blann* v. *Bell*, 2 DeG., M. & G. 776; *Holgate* v. *Jennings*, 24 Beav. 623; *Brown* v. *Gellatly*, L. R. [2 Ch. App.] 751; *Porter* v. *Baddeley*, 5 id. 542; *Macdonald* v. *Irvine*, 8 id. 112; *Covenhoven* v. *Shuler*, 2 Paige, 122, 132; *Cairns* v. *Chaubert*, 9 id. 160; *Spear* v. *Tinkham*, 2 Barb. Ch. 211; *Calkins* v. *Calkins*, 1 Redf. 337, 339; *Livingston* v. *Murray*, 68 N. Y. 485, 492; *In re Housman*, 4 Dem. 404, 413; *Kinmonth* v. *Brigham*, 5 Allen, 270; *Westcott* v. *Nickerson*, 120 Mass. 410; *Healey* v. *Toppan*, 45 N. H. 243; *Buckingham* v. *Morrison*, 136 Ill. 437; *Ackerman* v. *Vreeland*, 14 N. J. Eq. 23; *Howard* v. *Howard*, 16 id. 486; Bispham's Eq. [5th ed.] § 139; 1 Perry on Trusts [4th ed.], § 465; Hill on Trustees, 380; *T. G. T. Co.* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1; 138 N. Y. 657; *Gillespie* v. *Brooks*, 2 Redf. 349; *Tuttle* v. *Gilmore*, 36 N. J. Eq. 617; *Webb* v. *Earl of Shaftesbury*, 7 Ves. 480; *Adair* v. *Brimmer*, 74 N. Y. 539.) The will does not provide that the personal estate left by the testator shall be enjoyed in specie by the widow. Neither are the stocks now in question the subject of a specific bequest. (*Morgan* v. *Morgan*, 14 Beav. 72–82; *Macdonald* v. *Irvine*, L. R. [8 Ch. Div.] 101; *Cafe* v. *Bent*, 5 Hare, 24; *In re McDougal*, 141 N. Y. 21; *Collins* v. *Collins*, 2 M. & K. 703; *Hinves* v. *Hinves*, 3 Hare, 609; *Ellis* v. *Eden*, 23 Beav. 543; *Alcock* v. *Sloper*, 2 M. & K. 699; *Wearing* v. *Wearing*, 23 Beav. 99; Lewin on Trusts [9th Eng. ed. 1893], 319, § 4; *Pickup* v.

*Atkinson*, 4 Hare, 624, 630; *Woodward* v. *James*, 115 N. Y.
346; *Green* v. *Britten*, 1 DeG., J. & S. 649.) Assuming the
money in question to be dividends, in the ordinary sense of
the term, they are not income and do not belong to the life
tenant. (1 Jarman on Wills [6th Am. ed.], 577; 2 Williams
on Exrs. [R. & T. Am. ed. 1895] 699; 2 Lindley on Part.
[Ewell's ed. 1881] 1418; *Howe* v. *Earl of Dartmouth*, 7 Ves.
137; *Fearns* v. *Young*, 9 id. 549; *Dimes* v. *Scott*, 4 Russ.
195; *Taylor* v. *Clark*, 1 Hare, 161; *Morgan* v. *Morgan*, 14
Beav. 72; *Meyer* v. *Simonsen*, 5 DeG. & S. 723; *Wight-
wick* v. *Lord*, 6 H. L. Cas. 217; Llewellyn on Trusts,
29 Beav. 171; *Brown* v. *Gellatly*, L. R. [2 Ch. App.]
751; *Porter* v. *Baddeley*, L. R. [5 Ch. Div.] 542; *Daines*
v. *Eaton*, W. N. 95; *Cairnes* v. *Chaubert*, 9 Paige, 160;
*Kinmonth* v. *Brigham*, 5 Allen, 270; *Healey* v. *Toppan*,
45 N. H. 243; *Buckingham* v. *Morrison*, 136 Ill. 437.)
Assuming the stock in question to have been lawfully retained
by the executrix, yet the dividends having been paid out of
capital remain capital. (*Gibbons* v. *Mahon*, 136 U. S. 549,
564; *Bouch* v. *Sproule*, L. R. [12 App. Cas.] 385; *Cragg*
v. *Riggs*, 5 Redf. 82, 92; *Riggs* v. *Cragg*, 26 Hun, 89, 106;
89 N. Y. 479, 487; *In re Kernochan*, 104 id. 618; *Clarkson*
v. *Clarkson*, 18 Barb. 646; *Simpson* v. *Moore*, 30 id. 637;
*In re Skillman*, 2 Con. 161; *Knight* v. *Lidford*, 3 Dem. 88;
*Goldsmith* v. *Swift*, 25 Hun, 201; *Vinton's Appeal*, 99 Penn.
St. 434; *Thomson's Est.*, 153 id. 332; *Balch* v. *Hullett*, 10
Gray, 402; *Heard* v. *Eldredge*, 109 Mass. 258; *Gifford* v.
*Thompson*, 115 id. 478; *Gilkey* v. *Paine*, 80 Maine, 319;
*Hite* v. *Hite*, 93 Ky. 257, 267; *Armitage* v. *Garnett*, 3 Ch.
337; *In re Malam*, Id. 578; *People ex rel.* v. *Davenport*, 30
Hun, 177.) The executrix is chargeable with interest on so
much of the dividends as she appropriated to her own use.
(Perry on Trusts [4th ed.], § 468; *Manning* v. *Manning*, 1
Johns. Ch. 527; *Morgan* v. *Morgan*, 4 Dem. 353; *King* v.
*Talbot*, 40 N. Y. 76, 96; *Adair* v. *Brimmer*, 74 id. 539,
555.) The rule for apportioning the moneys actually realized
from the stocks now in question, as between capital and

income, is this: Treat the whole amount of dividends col-
lected by the executrix up to the date of the decree, includ-
ing the interest with which she is chargeable by reason of her
appropriation of them, as representing the value of the stocks,
and then find the sum which, had it been put at interest at
the testator's death, would amount to the aggregate of the
dividends and interest at the date of the decree. This sum is
capital, and the difference between it and the total of divi-
dends and interest is income. (*Williamson* v. *Williamson*,
6 Paige, 298, 307; *Roosevelt* v. *Roosevelt*, 5 Redf. 264; *Kin-
month* v. *Brigham*, 5 Allen, 270; *Healey* v. *Toppan*, 45 N.
H. 243; 1 Jarman on Wills [6th ed.], 576.) The interest
and dividends collected by the receiver of F. P. James & Co.
are not income of the estate of F. P. James. (*Woodward* v.
*James*, 115 N. Y. 346; *Fearns* v. *Young*, 9 Ves. 549; *Kin-
month* v. *Brigham*, 5 Allen, 270.) The Taylor estate was
not entitled to receive any part of the firm assets in specie.
(*Knox* v. *Gye*, L. R. [5 H. L.] 656; *Preston* v. *Fitch*,
137 N. Y. 41; *Menagh* v. *Whitwell*, 52 id. 146; *Staats*
v. *Briston*, 73 id. 264; *Sage* v. *Woodin*, 66 id. 578.)
Interest on the capital invested by Mr. James in the partner-
ship ought to have been allowed. (*Johnson* v. *Hartshorne*,
52 N. Y. 173; *Leserman* v. *Bernheimer*, 113 id. 39, 48;
*Bradley* v. *Brigham*, 137 Mass. 545; *Winchester* v. *Glazier*,
152 id. 316; *Morris* v. *Allen*, 14 N. J. Eq. 44; *Bullock* v.
*Bemis*, 3 N. Y. Supp. 390.) The retention by the executrix
of stocks and bonds was not legal or proper. (*Gillespie* v.
*Brooks*, 2 Redf. 349; *Hughes* v. *Empson*, 22 Beav. 181;
Perry on Trusts [4th ed.], § 439; Code Civ. Pro. § 2472,
sub. 3; *Hyland* v. *Baxter*, 98 N. Y. 610; *Haight* v. *Brisbin*,
100 id. 219; *Judd* v. *Warner*, 2 Dem. 104; *King* v. *Talbot*,
40 N. Y. 76, 90, 91; *Adair* v. *Brimmer*, 74 id. 539, 555.)

*William C. Wallace* for Chase and others, respondents.
The moneys received on account of the stocks owned by the
estate belonged to the remaindermen, not to the life interests.
They were not income. (*Wheeler* v. *Perry*, 18 N. H. 304;

*Heard* v. *Eldredge*, 109 Mass. 258; *Gifford* v. *Thompson*, 115 id. 478; *Barkley* v. *Wainwright*, 14 Ves. 66; *Clarkson* v. *Clarkson*, 18 Barb. 646; *Vinton's Appeal*, 99 Penn. St. 434; *Balch* v. *Hallett*, 10 Gray, 402; *Harvard* v. *Amory*, 9 Pick. 446; Perry on Trusts [4th ed.], § 545; *Knight* v. *Lidford*, 3 Dun. 88; *Scovel* v. *Roosevelt*, 5 Redf. 121; *Riggs* v. *Cragg*, 26 Hun, 106; 89 N. Y. 479; *In re Matter of Skillman*, 9 N. Y. Supp. 469; *In re Kernochan*, 104 N. Y. 627; *In re Robinson*, L. R. [3 Ch. Div.] 134; *Townsend* v. *U. S. T. Co.*, 3 Redf. 220; *Moss' Appeal*, 83 Penn. St. 264; *Reed* v. *Head*, 6 Allen, 174.) The Jansen-Taylor transaction cannot be approved. (Lindley on Part. 329, 353; *Smith* v. *Bodine*, 74 N. Y. 30; *Smith* v. *Tarlton*, 2 Barb. Ch. 336; *In re Underhill*, 117 N. Y. 475.) If the Jansen-Taylor transaction be approved as far as it goes, it was still incomplete, and the executrix's accounts must be surcharged by the sum of $1,170.05 on account of the securities, and the sum of $24,083.51 on account of the western lands, and by one-fifth of the taxes paid on the western lands, with interest on all the sums from May 14, 1886, the date of the partial settlement with Jansen. (*Schultz* v. *Pulver*, 11 Wend. 361; *O'Connor* v. *Gifford*, 117 N. Y. 279; *Baker* v. *Kingsland*, 3 Ch. Sent. 73; *Wood* v. *Byington*, 2 Barb. Ch. 387; *Miller* v. *White*, 50 N. Y. 141.) The dealings of Mrs. Butterfield, her agents, attorneys, aiders and abettors, with the Iowa lands and the bonds and mortgages, were in gross violation of her duties as executrix and trustee under the will. (Redf. Surr. Pr. [4th ed.] 537; *Coleman* v. *Coleman*, 5 Redf. 524; *Seabury* v. *Bowen*, 3 Bradf. 207; *Griswold* v. *Griswold*, 4 id. 277; *Gunning* v. *Carman*, 3 Redf. 69; *Bates* v. *Underhill*, Id. 365; *O'Connor* v. *Gifford*, 117 N. Y. 281; *Schultz* v. *Pulver*, 11 Wend. 363; *McCabe* v. *Fowler*, 89 N. Y. 314; *Rogers* v. *Rogers*, 3 Wend. 503; *Van Horne* v. *Fonda*, 5 Johns. Ch. 409.) The mortgages on the Rockingham apartment house owned by the estate and the accompanying bonds are debts of the testator, now due and payable, and should be paid out of the personal estate. (*Mosley* v. *Marshall*, 22 N.

Y. 200, 205, 206; *Bell* v. *Mayor, etc.*, 10 Paige, 49; *House* v. *House*, Id. 158; *Hepburn* v. *Hepburn*, 2 Bradf. 76; *Wetmore* v. *Parker*, 52 N. Y. 451; *Quinn* v. *Hardenbrook*, 54 id. 83.)

*Walter M. Rosebault* for executors of E. D. James and another. As to Ella E. James, individually, the referee has not made any conclusion of law to the effect that she is affected by the paper referred to. (*Shaw* v. *Kidder*, 2 How. Pr. 244; *Mandeville* v. *Reynolds*, 68 N. Y. 528; *Barrett* v. *T. A. R. R. Co.*, 45 id. 628; 8 Abb. [N. S.] 205; *Cox* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 414; *Gaillard* v. *Smart*, 6 Cow. 385.) The doctrine contended for by the executrix upon the question of the bonds would be against public policy. It would allow a man to dispose of his property in like manner as if he made his will, without the formalities and safeguards which are by statute thrown round such an instrument. (*Whitaker* v. *Whitaker*, 52 N. Y. 368.)

*Frank E. Smith* for Henry A. James and others, respondents. The bonds are not valid as gifts. (*Harris* v. *Clark*, 3 N. Y. 93; *Curry* v. *Powers*, 70 id. 212; *Holmes* v. *Roper*, 141 id. 64; *Wilson* v. *B. E. Society*, 10 Barb. 308; *Duvoll* v. *Wilson*, 9 id. 487; *Craig* v. *Craig*, 3 Barb. Ch. 76, 116; *Basket* v. *Hassell*, 107 U. S. 602, 612; *Richardson* v. *Richardson*, 148 Ill. 563; Pom. Eq. Juris. [2d ed.] § 1148; Code Civ. Pro. § 840; *Anthony* v. *Harrison*, 14 Hun, 198; 74 N. Y. 613; *Vanderbilt* v. *Schreyer*, 91 id. 392, 399; *Parkhurst* v. *Higgins*, 38 Hun, 113; *Carnwright* v. *Gray*, 127 N. Y. 92.) The bonds are not valid as a provision for the testator's wife. (*Hunt* v. *Johnson*, 44 N. Y. 27; 2 Story's Eq. Juris. [13th ed.] § 987; Perry on Trusts [4th ed.], §§ 107, 108; 3 Pom. Eq. Juris. [2d ed.] § 1293; *Whitaker* v. *Whitaker*, 52 N. Y. 368; *Wilbur* v. *Warren*, 104 id. 192; *Phillips* v. *Frye*, 14 Allen, 36; *Richardson* v. *Richardson*, 148 Ill. 563; *Harris* v. *Clark*, 3 N. Y. 93; *Hendricks* v. *Isaacs*, 117 id. 411; *Dean* v. *M. El. R. R.*,

119 id. 540; *Blaechinska* v. *Howard Misson*, 130 id. 497; *Vanderbilt* v. *Schreyer*, 91 id. 392.) The Iowa judgment of foreclosure and sale was nothing more or less than the ordinary one of foreclosure and sale. (*Lutz* v. *Kelly*, 47 Iowa, 307; *Cassidy* v. *Woodward*, 77 id. 354; *Pennoyer* v. *Neff*, 95 U. S. 714, 733; *Freeman* v. *Anderson*, 119 id. 185; *Scott* v. *McNeal*, 154 id. 34; *Durant* v. *Abendroth*, 97 N. Y. 132; *Shepard* v. *Wright*, 113 id. 582; *Fletcher* v. *Peck*, 6 Cranch, 87; *Phillips* v. *Frye*, 14 Allen, 36; *Whitaker Case*, 52 N. Y. 368.) The compensation awarded to the guardian *ad litem* of the infant contestant Woodward was authorized by law. (Code Civ. Pro. § 2566; *Weed* v. *Paine*, 31 Hun, 10; *McCue* v. *O'Hara*, 5 Redf. 336; *In re Wadsworth*, 6 N. Y. Supp. 932.) The judgment in *Young* v. *James* is not conclusive as to any of the matters in controversy in this accounting. (*People ex rel.* v. *Surrogate, etc.*, 36 Hun, 218.

*Robert Mazet* for the executors of Mary A. Clark, deceased, respondents. The bonds are not valid as gifts. (*Harris* v. *Clark*, 3 N. Y. 93; *Curry* v. *Powers*, 70 id. 212; *Holmes* v. *Roper*, 141 id. 64; *Wilson* v. *B. E. Society*, 10 Barb. 308; *Duvoll* v. *Wilson*, 9 id. 487; *Craig* v. *Craig*, 3 Barb. Ch. 76, 116; *Baskett* v. *Hassell*, 107 U. S. 602, 612; Pom. Eq. Juris. § 1148; Code Civ. Pro. § 840; *Anthony* v. *Harrison*, 14 Hun, 198; 74 N. Y. 613; *Vanderbilt* v. *Schreyer*, 91 id. 392, 399; *Parkhurst* v. *Higgins*, 38 Hun, 113; *Carnwright* v. *Gray*, 127 N. Y. 92; 1 Pars. on Cont. 234.) The bonds are not valid as a provision for the testator's wife. (*Hunt* v. *Johnson*, 44 N. Y. 27; Story's Eq. Juris. § 987; Perry on Trusts, §§ 107, 108; Pom. Eq. Juris. § 1293; *Whitaker* v. *Whitaker*, 52 N. Y. 368; *Wilbur* v. *Warren*, 104 id. 192; *Phillips* v. *Frye*, 14 Allen, 36; *T. T. B. Church* v. *Cornell*, 117 N. Y. 601; *Lutz* v. *Kelly*, 47 Iowa, 307.)

*Charles S. Clark* for guardian *ad litem*, respondent. The surrogate had absolute discretion as to granting the allowance to the guardian. His power to make such allowance existed independently of the Code and statutes. Such allowance

should not be regarded as costs, nor as extra allowance within the meaning of section 3252 *et seq.* of the Code of Civil Procedure. ( *Weed* v. *Paine*, 31 Hun, 10 ; 4 Civ. Pro. Rep. 305 ; *In re Wood*, N. Y. L. J., Dec. 30, 1891 ; Redf. Surr. Pr. [2d ed.] 769 ; *McCue* v. *O'Hara*, 5 Redf. 366 ; *Foster* v. *Kane*, 1 Dem. 67 ; *Schell* v. *Hewitt*, Id. 249.) The order or decree of the surrogate granting compensation to a guardian, being wholly discretionary, is not reviewable by the Court of Appeals as "resting in discretion." (Code Civ. Pro. § 190 ; *Provost* v. *Provost*, 70 N. Y. 141 ; *Hannahs* v. *Hannahs*, 68 id. 610 ; *Kane* v. *Lorillard*, 85 id. 184 ; *Coleman* v. *Phillips*, 24 Hun, 320 ; *Gooding* v. *Brown*, 35 id. 155 ; *Law* v. *McDonald*, 9 id. 27 ; *Getty* v. *Donnelly*, Id. 608 ; *Steere* v. *Childs*, 15 id. 511, 521 ; *Russell* v. *Duflon*, 4 Lans. 408 ; *Dickson* v. *McElwain*, 7 How. Pr. 138 ; *Howell* v. *Mills*, 53 N. Y. 522 ; *Bolles* v. *Duff*, 43 id. 469 ; *Anon.*, 59 id. 315 ; *Lawrence* v. *Farley*, 73 id. 187 ; *Sherman* v. *Strauss*, 52 id. 504 ; *Underwood* v. *Green*, 56 id. 247 ; *Bank of Geneva* v. *Spencer*, 18 id. 150 ; *Beards* v. *Wheeler*, 76 id. 213 ; *Lunney* v. *Campbell*, 72 id. 496 ; *King* v. *Barnes*, 9 Cent. Rep. 719.) It being a question of fact and not of law whether a special guardian is entitled to compensation, the decision upon the question by the surrogate is not reviewable. (*In re Valentine*, 100 N. Y. 607 ; *Lawrence* v. *Farley*, 73 id. 187 ; *Quincey* v. *White*, 63 id. 670 ; *Davis* v. *Clark*, 87 id. 623.) The allowance of compensation to a special guardian resting on discretion, and not upon statute, is not a substantial right and is not reviewable. (Code Civ. Pro. § 190 ; *Howell* v. *Mills*, 53 N. Y. 322 ; *Lawrence* v. *Bainbridge*, 56 id. 72 ; *Mills* v. *Davis*, 53 id. 349.) The order or decree of which appellant complains having been made upon her default to oppose it is not reviewable. (Code Civ. Pro. § 2568 ; *Mayor* v. *Cornell*, 9 Hun, 215 ; *Bailey* v. *Stone*, 4 How. Pr. 346 ; *Wehle* v. *B. Bank*, 8 J. & S. 161 ; *People* v. *Oakes*, 1 How. Pr. 195.) The appellant not having adopted the remedy of the Code against errors of a surrogate has lost her right to appeal. (*In re Hawley*, 100 N. Y. 206.) The power of the

court below to make statutory allowance is not subject to review by the Court of Appeals. (*Connaughty* v. *S. C. R. R. Co.*, 92 N. Y. 481; *Noyes* v. *C. A. Society*, 70 id. 481; *Harris* v. *Bennett*, 2 C. R. 23; *Morse* v. *Hasbrouck*, 63 How. Pr. 84; *Briggs* v. *Brown*, 13 Abb. Pr. 481.) An appeal will be dismissed unless a proper undertaking is served. (*Reese* v. *Boisea*, 92 N. Y. 632.) Where questions of fact are involved (as the question of fact as to whether the guardian deserved compensation and the amount of the same), and the case was in such form before the General Term (as it here was), that it could review the questions of fact, an appeal to this court brings up nothing for review and is improper. (*Randolph* v. *Loughlin*, 49 N. Y. 456; *Wright* v. *Hunter*, 46 id. 409.) Provisions for a guardian's compensation may be made irrespective of whether statutory costs or allowances were granted. And it is, therefore, immaterial whether costs were granted to the guardian or not. The fact he was awarded costs does not debar him from having compensation. (*Weed* v. *Paine*, 31 Hun, 10.)

GRAY, J. The first of the questions we shall consider is one which arises upon the appeal of the executrix. She made a personal claim, amounting to $127,123.16, which the surrogate allowed; but which the General Term, upon appeal, disallowed. The facts upon which it was based are these: In 1879, a few years before the death of Mr. James, he executed and delivered to his wife two bonds; one of which was conditioned for the payment of $43,920, one year after date, and the other for the payment of $30,720, one year after date. Both bonds bore interest and were secured by mortgages upon lands in the state of Iowa; the legal and record title to which was in Mr. James. A few days afterwards, Mr. James conveyed all of the lands covered by these mortgages to a grandnephew of Mrs. James; at the time an infant of the age of nine years. It was found with respect to this latter transaction that it was advised as a mode of delaying, and to enable legal proceedings to be taken to defeat, the payment of taxes, which

had been laid upon them and which were believed to
be illegal. In 1882 a suit was commenced to foreclose the
mortgages by Mrs. James; who made her husband and the
infant Wheeler, the grantee of the lands, parties defendant.
Process in the suit was served outside of the state of Iowa
upon the defendants, but Mr. James did not appear. In
1883, judgment of foreclosure and sale was entered, in which
the amount due to Mrs. James upon the bonds was fixed at
$94,973.83. No sale was made during the lifetime of Mr.
James under the decree; but, after his death and in 1885,
Mrs. James caused a sale to be made, at which the mortgaged
premises were sold for the sum of $5,280. The decree of
foreclosure and sale gave no judgment against Mr. James per-
sonally, forasmuch as the District Court in Iowa had acquired
no jurisdiction to render judgment *in personam* upon a serv-
ice without the state and without personal appearance of the
party served. The claim of the executrix is for the whole
sum secured by the two bonds, with interest from their date,
less the amount realized upon the sale of the lands. The sur-
rogate found, with respect to the delivery of the bonds and
mortgages, that they were a gift by Mr. James to his wife and
that he was not indebted to her at the time in any sum what-
soever. He allowed her claim on the ground that they were
enforcible obligations in the hands of Mrs. James against the
estate of her husband, regarded either as a gift, or as a pro-
vision for her in addition to the bequests of the will. I think
that the General Term correctly held that the executrix had
no claim upon these bonds, which she could enforce against
the estate in her hands, and that she had obtained all the relief
in the foreclosure suit to which she was entitled. These
bonds amounted, simply, to the promise of Mr. James to pay,
at some future day, the sum mentioned, without any consider-
ation to support that promise. Such a voluntary promise
cannot be enforced against the donor, or against his executors
or administrators. (See Pomeroy's Equity Jurisprudence
[sec. 1148]; Story's Equity Jurisprudence [sec. 987].) By
the latter authority, it is stated as follows: "The general

principle is established, that in no case whatsoever will courts of equity interfere in favor of mere volunteers, whether it be upon a volunteer contract, or a covenant, or a settlement, however meritorious may be the consideration, and although they stand in the relation of a wife or child."

The question of the validity of a gift, in the form of a promise to pay, only, without consideration, was elaborately considered in *Harris* v. *Clark* (3 N. Y. 93) and it was there held, to quote the language of Judge RUGGLES, " that a voluntary promissory note without consideration is not, as the law now stands, the subject of a valid gift by the maker, either as a present donation, or as a gift to take effect at the death of the donor." The fact that in that case the subject of the gift was a bill, or draft, does not affect its application to the case of a bond; inasmuch as no presumption of a valuable consideration obtains from the presence of the seal, in view of the findings of fact that the bonds were executed and delivered as a gift and not because of any indebtedness. In *Whitaker* v. *Whitaker* (52 N. Y. 368), the question discussed was whether a meritorious consideration was sufficient in equity to sustain a promissory note given by a husband to his wife, as against his collateral heirs; and the conclusion reached by Judge PECKHAM (in which all his associates concurred), after a review of the English authorities, was that the law was well settled, contrary to the doctrine in the early case of *Wright* v. *Wright* (1 Cow. 598), " that a meritorious consideration, or the duty to provide for a wife or child, is not sufficient to support an executory covenant." The case of *Hunt* v. *Johnson*, (44 N. Y. 27), was referred to in the opinion and deemed to be without the rule; because it was a case of an executed sale or transfer of real estate, to uphold which natural affection is undoubtedly a sufficient consideration. Nor does the fact that the gift in *Whitaker* v. *Whitaker* was of a promissory note, which the husband made in his lifetime for the purpose of making a provision for his wife, affect the question as an authority in point; for the same reason that I have mentioned in reference to the case of *Harris* v. *Clark*.

It is unnecessary to discuss a question which has been well treated at the General Term, further than to say that I think that they were right in holding that, while the Iowa judgment of foreclosure had no effect to create a personal liability upon the bond, it was conclusive as to the ownership of the mortgages and the right of Mrs. James to have the lands therein described sold and the proceeds applied upon the amount represented by the bonds. The importance of that holding seems to be that the contestants upon the accounting are precluded from inquiring either as to the right of the executrix to sell the land, or as to whether she held the mortgage in trust for the firm of F. P. James & Co.

Another question, as to which the executrix has appealed, is with reference to the payment to her of $2,500 upon the day of the testator's death. It seems that, in the morning of that day and while Mr. James was in fact dying, a clerk of F. P. James & Co., holding a power of attorney to sign checks for the firm, was requested by some one, acting as a messenger from the residence, to draw two checks for Mrs. James' account, one for $1,000 and the other for $1,500. Upon the clerk's demurring to the request, he was assured that it was all right and he then drew the checks, which the messenger caused to be cashed and deposited to the individual credit of Mrs. James. The surrogate found that these checks were delivered to Mrs. James by her husband's authority; but the General Term has reversed the surrogate in that respect; holding that there is no evidence to sustain the finding. I think their conclusion was correct and that the facts of the transaction would not warrant any inference that the authority of the clerk, under the power which he held from the firm, had been validly called into exercise. If the transaction had been merely one, as to which all we knew was that the clerk had delivered the checks to Mrs. James, an inference might have been possible, which is quite rebutted by the circumstance that the clerk only drew and delivered them when moved to do so by a messenger; whose source of authority to make the request was not shown to be in Mr. James.

One of the most important questions raised upon the accounting was, whether dividends received upon the stocks of certain railroad construction companies should be treated as capital, or as income. Two of the companies constructed railroads and upon their sale received land grants in payment. The other company also constructed and sold a railroad, but received in part payment a certificate of indebtedness secured by a mortgage upon land. The surrogate apportioned the dividends, paid by these corporations since the death of Mr. James, by holding so much as were derived from the purchase price of lands sold to be capital and so much as were derived from interest on deferred payments on contracts of sale, or upon the certificate of indebtedness, he held to be income. The General Term reversed that ruling and held that all the dividends were income. If there was nothing in the language of this will, which evidenced an intention on the part of the testator that his widow should have and enjoy as income whatever actually came into the estate *eo nomine* and as he had been himself in the habit of receiving, I should hesitate very much to say that the General Term were correct. Undoubtedly, the dividends declared by these companies were from their capital, because they had no source of income other than from their sales of land and dividends could not be derived in any other way. These corporations were peculiar; in that their only business, after the expenditure of their capital in the construction of railroads, was to sell the lands received in payment and to divide the proceeds, as received, among their stockholders. In that respect, of course, there was a distinction between them and corporations which are engaged in ordinary business enterprises and receive returns in the way of earnings upon the invested capital. Their dividends were, in truth, ordinary and not extraordinary; for the reason that they were the only ones which they could, in the nature of things, make. I think, however, we may consider the question before us upon a broader ground, where, in connection with kindred questions, it may be disposed of by the application of the rule of intention. Whether the rule, with

relation to the respective rights of the life tenant and remaindermen, shall so apply, in the case of a testator's estate, as that the personalty shall be converted and invested in such permanent and legally recognized forms as shall benefit both the tenant for life and the remainderman, may depend upon the form and language of the will. It seems to me that in this case the intention of the testator, that his personal estate shall remain in specie, the income of which should be received and enjoyed by his wife as it had been by himself, is manifest. At the time when he made his will he had no children, nor descendants of children. The will was drawn at his own dictation and peculiarly expresses his great affection for his wife and his desire that her enjoyment of his estate and the benefits which she was to derive from it were to be without any regard to those who, after her death, were to have the reversion of his property and whom he defines by the very general and generic term of his "legal heirs." In the first place, his language is "I give and bequeath to my beloved wife Julia, for her sole use, enjoyment and benefit during her life, without restraint, deduction or interference in any manner whatsoever, as follows : *First.* One-half of the income of all my property of every kind of which I may die possessed." He then gives her the use of his town and country residences and makes the absolute bequest of all household furniture, pictures, plate, books, ornaments, horses, carriages, farm implements and property of every description, in, or upon, or appertaining in any manner to the two houses and residences. He then proceeds as follows: "I give, devise and bequeath to my legal heirs the remainder of the income from my property during the life of my wife after the payment and discharge of all taxes, etc. * * * except as hereinafter provided in case of interference. I give, etc., to my legal heirs * * * the reversion and ownership of all my estate and property after the death of my wife, with the reservation, exception and direction, that in the event of any of my legal heirs making any attempt directly or indirectly, in any manner or form,

to interfere with or restrain in any manner my beloved wife from full enjoyment, use, management and direction and disposition of the property and income of my estate, as herein devised, then and in that event such one of my legal heirs as shall do or perform or aid or abet the performance of such an act, or cause the same to be done, shall be forever debarred from any part, parcel, interest or ownership, or inheritance to any of my property. * * * I authorize and direct my executrix in her discretion to sell and convey such portion of my property as may be requisite or necessary to pay and discharge my just debts and obligations."

It stands out very clearly from the peculiar and strong language selected by the testator, that the interest which was to be enjoyed by his "legal heirs" in the estate was subordinated to the interest of his wife. To him she was everything and they were, merely, kindred, having by law certain claims which he was not indisposed to recognize and which he provided for in the manner described. Although in the case of *Woodward* v. *James* (115 N. Y. 346), we held that a legal trust was created of the testator's real and personal estate, not given to the widow absolutely for her life, we reached that conclusion, inasmuch as it was necessary, because of the authority and duty imposed upon the widow, that the legal title should be vested in her as trustee. Of course there was nothing in the language used in the will, which conveyed the idea that the testator intended or thought of a trust; but the exigencies of the situation, in our judgment, required the creation of a trust by implication. The question might have been a very different one, if the language of the will spoke of a trust, or indicated the notion of the testator that his wife, with respect to the management and use of the property, should be clothed with the duties of a trustee and guided by the strict rules to which trustees are subjected. In this case, while a trust is created by implication, all of the stringent injunctions of the testator with respect to his widow's use, enjoyment, or control, of the property, remain with all their meaning. The one-half of the income of " all of his property of every kind,"

of which he might die seized, is given to his wife " without restraint, deduction or interference in any manner whatsoever." Such language, in connection with that subsequently used, enjoining his legal heirs against attempting to interfere with the " full enjoyment, use, management and direction and disposition of the property and income of his estate," under penalty of being excluded from any interest or share therein, contains most significant expressions of an intention that his widow should have a half of the income of his property " of every kind," which could not be cut down and which she was fully to enjoy and manage. It is also significant that the direction to sell is only in the event of a sale becoming necessary to discharge debts. I cannot read this will without, not only inferring the intention of the testator to have been that his property should remain in specie for his wife's benefit and subject to her uncontrolled management, but also seeing therein that intention to be plainly expressed. It is inconceivable that Mr. James, in drawing a will in such language, had the intention that his widow should at once convert and capitalize the estate in such forms of investment as the law sanctions, by rules established for the construction of wills colorless as to any expression of intention. To quote the words of Lord Chancellor COTTENHAM, in *Pickering* v. *Pickering* (4 My. & Cr. at p. 300), " I think it would be a violation of the testator's intention not to allow the wife to enjoy the income of the property as it is." This case differs from others which have been cited, in that the testamentary disposition was not strictly of an estate to be enjoyed in succession by different persons. One-half of the income of the testator's property is given to his legal heirs and though it may have proved to be, as counsel has put it, an illusory gift, because of the burdens imposed upon their share of first discharging thereout all the taxes and charges against the estate, nevertheless, the situation was, and is, that of a division of the income of the property between the widow and the testator's legal heirs. To the extent that their half of the income is applied in payment of taxes and other charges, their rever-

sionary interest is protected, and benefited, and they can only complain of the testator's subordinating their interests so completely to those of his widow. The counsel for the heirs has made a very able and ingenious argument, which he has fortified by reasoning upon cases in the English courts, as well as upon some in this country; but all the cases that I have seen recognize that the rule of intention must always override established rules of construction. It is only where the instrument fails to express, or to disclose, an intention, that we must resort to the rules which have been established by the decisions of the courts. That an intention is manifest in the will in question, I have endeavored to show. We have only to put ourselves in the testator's situation, when he was making his will and therein providing for the enjoyment of his estate by his wife, to be impressed with the conviction that he had no idea of constituting a technical trust, with all its duties and obligations; but, without children, or descendants, he draws a will in his own strong language, making what he supposed to be an ample provision for his wife during her life and one in harmony with the conditions under which she had lived. He cares little for others, in comparison, if we may judge from the language of his will; but he recognizes the claims of that general class designated as his "legal heirs."

I deem it of considerable significance, when considering this case in connection with others, to which our attention has been referred, and in addition to the difference in the facts and phraseology upon which I have commented, that this testamentary disposition was not that of a gift of the residuary estate to trustees; although even in such a case a plain intention discoverable in the will would prevail against an arbitrary rule of law. In Jarman on Wills, (p. *613), it is said with reference to a residuary devise that the same principle applies, "if an intention that the property shall be enjoyed in specie can be collected from the terms in which either the life interest, or the ulterior subject of disposition, or both these interests, is or are bequeathed." In this case, as in every other case where a will is the subject of construction, it is the inten-

tion of the testator and not the rule of construction which is to govern, when they come in conflict. In Redfield on Wills (2 vol. *478), it is said that, "Where there is anything in the will from which it may fairly be inferred that the testator expected the tenant for life to enjoy the property specifically, it cannot be converted into money or public funds ; but the remainderman must take his chance of anything remaining after termination of the life estate.' These latter remarks were made with reference to the case of *Howe* v. *Earl of Dartmouth.*

*Howe* v. *Earl of Dartmouth,* (7 Ves. 137), is considered to be the leading case in England, upon the question whether property bequeathed by a testator shall be retained in specie, or whether, if of the perishable class of securities, it shall be converted in such a way as to produce capital bearing interest. The rule as laid down by Lord Chancellor ELDON in that case, as explained by subsequent decisions, among which is particularly to be mentioned that of Lord COTTENHAM in *Pickering* v. *Pickering,* (*supra*), is this; that where there is a residuary bequest of personal estate, to be enjoyed by several persons in succession, a court of equity, in the absence of any evidence of a contrary intention, will assume that it was the intention of the testator that his legatees should enjoy the same thing in succession and, as the only means of giving effect to such intention, will direct the conversion of personalty into permanent investments of a recognized character. Lord ELDON laid down the rule in that case, because of the absence of language in the will from which the direction of the testator might be inferred that his estate should continue as it was. Some difference of opinion has existed among the English judges with respect to the application of the rule laid down in *Howe* v. *Earl of Dartmouth,* which, in the recent case of *Macdonald* v. *Irvine,* (L. R., 8 Ch. D. 101), is adverted to in the opinion of Lord Justice THESIGER. In the previous case of *Hinves* v. *Hinves* (3 Hare, 611), Vice-Chancellor WIGRAM had said : " The court in applying the rule has leant against conversion as strongly as is consistent with the suppo-

sition that the rule itself is well founded." In *Morgan* v. *Morgan* (14 Beav. 72), the master of the rolls, Sir JOHN ROMILLY, said that, "the effect of the later cases has been to allow small indications of intention to prevent the application of the rule." Lord THESIGER, referring to the leaning of these judges, with others, against the application of the rule, adopts the following words of Lord ROMILLY: "That unless there can be gathered from the will some expression of intention that the property is to be enjoyed in specie, the rule in *Howe* v. *Earl of Dartmouth* is to prevail. It is therefore incumbent on the persons contesting the application of that rule, and on the court which forbids that application, to point out the words in the will which exclude it, and if this cannot be done the rule must apply. * * * In almost all, if not all, the cases which have been cited in argument, where such an intention was found to exist, * * * we find either words in their natural and literal sense importing use or enjoyment of the property in the state in which the testator left it at his death, or directions contained in the will as to the conversion of the property which were inconsistent with a conversion by the court taking place upon the death of the testator." In that case the lords justices divided in opinion, as to whether any of the elements existed in the will under consideration to show the intention of the testator that the case should be taken out of the general rule; but they all agreed, if there was a sufficient indication of intention in the will itself to that effect, that the personalty should remain in specie until after the death of the testator's wife. While there the testator gave to his wife for life "all the income, dividends and annual proceeds of his entire estate," there were not present these significant words of injunction against any "deduction," or any interference with her use, enjoyment, or management.

In *Blann* v. *Bell* (2 De Gex, Macn. & G. 775), the principle was distinctly recognized that the intention in the will should govern upon the question of the retention of property in specie and that where it is seen to exist the case will be

taken out of the general rule. In *Collins* v. *Collins* (2 My. & K. 703), the language of the gift to the wife is not unlike, in its effect, to that in the present case. The testator there gave "all and every part of his property in every shape and without any reserve and in whatever manner situated, for her natural life," and at her death the property was to be divided among his father, brothers and a sister. Sir JOHN LEACH, M. R., held the rule in *Howe* v. *Earl of Dartmouth* did not apply. In this state the rule laid down in the *Earl of Dartmouth's* case was early adopted, as applicable in the absence of any indication of an intention on the part of the testator that the legatee for life should enjoy the property in its then state. (See *Spear* v. *Tinkham*, 2 Barb. Ch. 211, and other cases cited on brief for heirs.) In every case, in this, or any other state, however stringently that rule is applied as between a tenant for life and remainderman, it is the absence of manifest or plain intention which sets it in operation. In *Clarkson* v. *Clarkson* (18 Barb. 646), the decision of the question of the disposition to be made of extraordinary dividends was referred to the discoverable intention of the testator. The case of *King* v. *Talbot* (40 N. Y. 76), frequently cited, has no application. The question discussed was with reference to how the discretion of trustees is prudently and lawfully exercised in the investment of moneys held for the benefit of minors and a very strict rule was laid down.

What I have said is applicable to the question of the right of the widow to retain in specie the personal estate bequeathed and to her right to have and to enjoy the income from it, as it had been received by the testator in his lifetime.

The testator knew about his investments. They were spread out on his books and the comprehensive words of a gift of his "property of every kind," "without restraint, deduction or interference in any manner," are especially significant of the intention that his widow should have whatever came into the estate in the form in which he left it.

The point is, also, made by the contestants that certain interests and dividends, collected upon certain stocks and

bonds prior to his discharge by the receiver, who was appointed of the firm property, should have been carried to capital, instead of being credited to, and distributed as, income. The question concerns the receiver's liquidation of the partnership affairs. In an action brought within a few months of the testator's decease by a creditor of the firm, for the protection and distribution of its assets, a receiver was appointed; who continued until December, 1885, when a judgment in the action was rendered, settling his accounts and directing him to deliver over the assets in his hands to Mrs. James; who was entitled, in her capacity as executrix of the surviving partner, to settle with the legal representatives of the deceased partner. Under the provisions of Mr. James' will his executrix became vested at once with the title to all of his estate, in the capacity of a trustee for the purposes mentioned. Included in the property of the estate was the testator's interest in the firm of F. P. James & Co. The direction as to his widow's right to one-half of the income applied, of course, as well to that species of property. For the reasons I have just expressed, she was under no obligation to convert and to capitalize those assets, or the income received thereon. The interest of Mr. James' partner, Mr. Taylor, was in one-fifth of the profits of the business and that interest, which, upon his death, vested in Mrs. Taylor as his executrix, has been settled with. So far. as the question of the winding up of the partnership business is concerned, I fail to find any substantial ground for the objection of the contestants as to the treatment by the receiver of the income and expenses. The evidence is that twenty per cent of the income was credited to the Taylor account; to which was, also, charged its due proportion of the expenses of the receivership. That seems to me to have been a proper method of liquidating the business. The decree in the receivership action passing on the accounts is not open to attack in this proceeding and, with respect to the right of the executrix of Mr. James to treat as income the particular moneys collected by way of dividends and interest and paid over to her by the receiver, I do not see how the next of kin

can be heard to complain. That was her right under the provisions of the will and indirectly, if not directly, they were benefited by all that was income to the estate.

Objection was made by the contestants to the settlement which was effected by the executrix as to the interest of her husband's former partner, Mr. Taylor. He predeceased Mr. James by a few days only, leaving his widow sole executrix. Pending the administration of the receiver, who had been appointed of the partnership property, Mrs. James commenced negotiations for a settlement with Mrs. Taylor as to the claims of the Taylor estate. They eventually agreed upon the sum of $27,000, after varying more or less widely in their estimates of what was due upon the Taylor interest. The settlement was not, however, consummated between them. Mr. Jansen then became the purchaser from Mrs. Taylor and took from her a transfer of all claims, which the Taylor estate had against the assets of F. P. James & Co.; including certain lands in Iowa and Texas. However this arrangement was brought about, is only matter of inference. There is nothing to show that Mrs. James had any interest in the Jansen purchase. She doubted her right to complete her negotiations with Mrs. Taylor and the latter was advised by her counsel not to sell to Mrs. James, either individually, or as executrix. After Jansen became the representative of the Taylor interest, and when Mrs. James had become possessed of the assets upon the discharge of the receiver, a settlement was reached, upon statements made by an accountant as to the firm affairs, which were based upon figures showing what was due to the James estate, what was due upon the Taylor interest and what was the total cost of the securities as shown by the firm books. The increase in the figures of the statements, upon which the settlement was made with Jansen, over those in the statement made at the time of the proposed settlement with Mrs. Taylor, was accounted for by reason of the advance in value of the securities. Mrs. James then transferred to Jansen·one-fifth of all the securities of the late firm and received back from him, in cash, the difference between one-fifth of their

cost price and the amount which had been found due from the firm to the Taylor estate Upon examination of the facts upon which an adjustment of accounts and interests was reached and this settlement was made, and which are quite complicated, I am satisfied that the surrogate reached a correct conclusion and that the evidence supported the findings which he made. The contestants have not shown that any wrong principle was adopted; or that the facts were wanting to justify that part of his decree upon the accounting. The General Term has reviewed his decision and the question must stop there.

With respect to the question of the propriety of crediting Mr. James' capital with interest to the time of the final settlement, there is no evidence of any agreement to allow interest and the fact that, in making up previous accounts between the partners, interest had been credited is not sufficient evidence of usage to dispense with the necessity of proving a special agreement. There were no articles of co-partnership and all that was found with respect to the partnership interests was that Mr. Taylor was to have one-fifth of the profits and was, to bear one-fifth of the losses of the business. When their association of interests was dissolved by death, there was nothing upon which a right to claim interest on Mr. James' capital could rest.

As to the claims of Jansen, as assignee of Taylor's executrix, with reference to the lands in Iowa and Texas, they do not seem to have been comprised within the settlement. Such claims must be the subject of future arrangement.

The questions which I have considered with respect to this accounting are all which demand any review by us. The record is very voluminous and has required much time for its consideration. Without further discussion of the matter, I am satisfied with the correctness of the conclusions reached by the General Term, in its order upon the surrogate's decree, and I, therefore, advise its affirmance; with costs to all parties who have appeared by counsel and have filed briefs upon this appeal, to be paid out of the estate.

All concur, BARTLETT, J., upon all points except as to the alleged dividends of the construction companies, so called, he holding the judgment should be entirely reversed so far as it decides the dividends paid by the companies to be income and the accounts changed accordingly; FINCH J., not voting.

Ordered accordingly.