Order reversed, without costs, and an alternative writ of mandamus directed to issue.

---

GEORGE WILLIAM TOERGE, Respondent, *v.* NICHOLAS TOERGE, Appellant; EDWARD P. TOERGE, Respondent, Impleaded with Another.

*Will — when a residuary clause does not carry estates in remainder — when it covers only things* ejusdem generis.

In an action brought to procure a construction of the so-called residuary clause of the will of Maria Elizabeth Stark, it appeared that the testatrix died seized and possessed of five houses and lots, and about $10,000 worth of personalty, and that she left surviving her, two children, a son, John Neiheisel, who, at the time of the making of the will, and up to the time of his death, was of unsound mind, and a daughter Lena, wife of the defendant, Nicholas Toerge. By her will the testatrix gave John Neiheisel $100 a month while he was men-

tally incapacitated, and in lieu thereof, in case of his recovery, she gave him during life "the following real property, to wit, the house and lot known by the street number 79 on Myrtle avenue, the house and lot known by the street number 81 on Myrtle avenue, and the house and lot known by the street and number 161 on Court street." She further provided that if he died of the disease he was then afflicted with, "leaving him surviving his present wife, and never possessed of the premises aforesaid," his wife should receive a legacy of $4,000.

Then, after giving a few small legacies, she devised to her daughter Lena Toerge, a life estate in the other two houses and lots, specifically mentioning each house by its street number, and further provided, "and until the aforesaid John Neiheisel does fully recover from the disease he is now afflicted with, and in the event of his death, during the lifetime of Lena Toerge, I give and bequeath to her, during her life, the houses and lots Nos. 79 and 81 Myrtle avenue, and the house and lot No. 161 Court street, all in the city of Brooklyn, New York." This provision was followed by the clause, "I further give and bequeath to her all my jewels, pictures, ornaments, books, household furniture, and all other property of whatsoever kind or nature not hereinbefore made mention of, absolutely and forever."

Lena Toerge died after the testatrix and left a husband and two children. By her will she made her husband her sole devisee. John Neiheisel died after Lena, without surviving issue, never having recovered his sanity.

The question was whether under the words of the so-called residuary clause, "and all other property of whatsoever kind or nature not hereinbefore made mention of," Lena Toerge, or her husband under her will, took an estate in remainder in the five houses and lots, or whether the testatrix died intestate as to the estate in remainder therein, in which event it would pass primarily in equal parts to her daughter Lena and to her son John.

*Held,* that, upon a consideration of the whole will, the latter construction was correct;

That the rule that the devise of the "rest, residue and remainder" of an estate was to be construed as carrying everything not before effectively disposed of in a will, had exceptions where the language used tended to indicate a different intention upon the part of the testatrix;

That the words "not hereinbefore made mention of" were to be construed in their ordinary and popular sense, and meant and were equivalent to the words "direct attention to," "speak briefly of," "name casually or incidentally;" that, consequently, in view of the fact that the testatrix had already specifically mentioned each house and lot by its street number, when the testatrix made use of the words "all other property of whatsoever kind or nature, not hereinbefore made mention of," it must be held that the words "all other property" did not include the real estate mentioned;

That such words in the will were restricted to property of the same general nature as that already described, viz., "jewels, pictures, ornaments," etc., and that by such words the testatrix only meant to bequeath the undisposed of personalty.

APPEAL by the defendant, Nicholas Toerge, from a judgment of the Supreme Court, bearing date the 9th day of April, 1896, and entered in the office of the clerk of the county of Kings, upon the decision of the court, rendered after a trial at the Kings County Special Term, construing the last will and testament of Maria E. Stark, deceased.

*Josiah T. Marean,* for the appellant.

*Adolph Simis, Jr.,* for the plaintiff, respondent.

*John L. Devenny,* for the defendant, respondent.

Judgment affirmed on the opinion of the Special Term, with costs to all parties, payable out of the estate.

All concurred.

The following is the opinion of the Special Term:

OSBORNE, J.:

One Maria Elizabeth Stark died January 4, 1880, leaving a last will and testament bearing date May 15, 1879, which has been duly admitted to probate. This action is brought to obtain a judicial construction of the so-called residuary clause of her will.

At the time of making her will the testatrix had two children living, viz., a son, John Neiheisel, then of unsound mind, and a daughter, Lena, the wife of the defendant Nicholas Toerge.

The testatrix, at the time of making her will, was the owner of four certain houses and lots in Brooklyn, a house and lot in New York city and certain personal property.

She died seized of said real estate, and also possessed of personal property and cash to the appraised value of nearly $10,000.

By her will the testatrix, after directing the payment of her debts, gave and bequeathed to her son John the monthly sum of $100 during the period of his mental incapacity. In case of his fully recovering, then, in lieu of said monthly payments, the testatrix gave and bequeathed " to him during his life the following real property, to wit, the house and lot known by the street number 79 on Myrtle avenue; the house and lot known by the street number 81 on Myrtle avenue; the house and lot known by the street number

161 on Court street." The testatrix further provided that, in case her said son died of the disease he was then afflicted with and " shall never have been possessed of the premises aforesaid as hereby provided," leaving him surviving his present wife, Christina, she should receive a legacy of $4,000. The testatrix appointed her daughter, Lena Toerge, and her executors or administrators, trustee or trustees for the purpose of making said monthly payments to her said son, and authorized her executor to pay said sum of $100 monthly to her said daughter.

Then followed three legacies of $200 each.

Next, testatrix gave and bequeathed to her " daughter, Lena, * * * during her life, the house and lot known by the street number 180 on Amity street, in the city of Brooklyn, and the house and lot known by the street number 147 on West street, corner of Barclay street, in the city of New York;

" and until the aforesaid John Neiheisel does fully recover from the disease he is now afflicted with, and, in the event of his death, during the lifetime of Lena Toerge, I give and bequeath to her during her life the houses and lots Nos. 79 and 81 Myrtle avenue, and the house and lot No. 161 Court street, all in the city of Brooklyn, New York.

" I further give and bequeath to her all my jewels, pictures, ornaments, books, household furniture and all other property of whatsoever kind or nature, not hereinbefore made mention of, absolutely and forever."

. The testatrix appointed Nicholas Toerge to be her executor.

Lena Toerge, the daughter of testatrix, died March 4, 1883, leaving her surviving her husband, Nicholas Toerge, and two sons, viz., George William Toerge, the plaintiff, and Edward P. Toerge, one of the defendants. By her will duly probated she made her husband her sole devisee.

John Neiheisel, the son of testatrix, died December 30, 1884, without surviving issue, never having recovered his sanity and leaving his widow Christina, to whom the legacy of $4,000 bequeathed to her has been paid.

The question sought to be determined in this action is, whether the testatrix, by the so-called residuary clause of her will, intended, by the use of the words, " and all other property of whatsoever kind

or nature, not hereinbefore made mention of," to devise to her daughter, Lena Toerge, the estate in remainder in the said five houses and lots, the life estate in which she had bequeathed to her son and daughter as above set forth, in which event said realty passed to the defendant Nicholas Toerge under the will of his wife, or whether testatrix died intestate as to said estate in remainder, in which event such realty passed, one-half thereof to the daughter Lena and one-half thereof to the son John, and subsequently on his death to the plaintiff, George William Toerge, and the defendant Edward P. Toerge, the nephews and heirs at law of their uncle, John Neiheisel, subject, of course, to the life estates given by testatrix to her son and daughter.

In construing this so-called residuary clause it is the duty of the court to be governed by the apparent intention of the testatrix, as disclosed by the whole will, as well as to bear in mind the presumption that the testatrix, when she made her will, did not intend to die intestate as to the great bulk of her property; if, however, such intestacy fairly appears, it is no part of the duty of the court to distribute the property undisposed of, by the insertion in the will of some omitted provision, in order to avoid intestacy.

An examination of that portion of the will preceding the so-called residuary clause plainly shows, to my mind, that the testatrix desired to provide equally well for her daughter and for her son during their lives, contingent, however, on her son's recovery, and that event she plainly contemplated as likely to occur; nowhere can there be spelled out of any portion of the will preceding the so-called residuary clause any intention to expressly favor her daughter at the expense of her son, provided he fully recovered. Yet, if the so-called residuary clause is to be construed as showing an intention to devise to her daughter the estate in remainder of her realty, the effect of such a construction would be to eliminate the impartiality of the testatrix and to vastly favor her daughter at the expense of her son.

Again, the testatrix, in the clause making provision for her daughter, gives to her " during her life " the two houses and lots designated, and then further provides that until her son John recovers, " and in the event of his death during the lifetime of Lena Toerge, I give and bequeath to her during her life " the

houses and lots which she had in the previous clause given to her son, in case of his recovery, "during his life." Here, in addition to the devise to her daughter for life of the two houses and lots designated, is a provision plainly showing that the testatrix had in her mind the contingency of her son's death during her daughter's lifetime, and yet she expressly provides that if such an event should happen, her daughter is then only to have "during her life" the houses and lots which have been devised to her son for life in case of his recovery.

It seems hardly reasonable to suppose that had the testatrix intended that her daughter should take the estate in remainder, as well as the life estate, she would have been so particular as to specially limit the interest given her to a life estate, and then, in the very next paragraph of her will, by vague and uncertain language, give to her the estate in remainder. And this conclusion acquires additional force from the fact that when the testatrix was contemplating the contingency of her son dying before her daughter, she should still limit to a life estate the interest which her daughter should take in the houses and lots which she had given to her son for life, in case of his recovery. Is it not more reasonable to assume that the testatrix, after providing for her son and daughter during their respective lives, intended that her grandchildren should take the estate in remainder, and that to insure that disposition of her estate she limited the interest given to her son and daughter to a life estate, so that they could not divert it from her grandchildren?

The learned counsel for the defendant Nicholas Toerge contends that the clause in question is a general residuary clause, and to support this contention cites numerous authorities, holding that a devise of the "rest, residue and remainder" of the estate is to be construed as carrying everything not before effectually disposed of. This rule of construction, however, has its exceptions where the language used tends to indicate a different intention on the part of the testator. In *Kerr* v. *Dougherty* (79 N. Y. 327) the court says (p. 348): "From the cases cited it is entirely clear that in the interpretation of a residuary clause in a will, or one which it is claimed bears any analogy to it, the court will not only look at the language employed, but the surrounding circumstances, to determine what the intention of the testator was." In *Floyd* v. *Carow* (88 N. Y. 560)

the court says (p. 568) : " But the intention is the controlling con-
sideration, and a particular interest or estate will not pass by a
residuary clause when it appears from other provisions of the will
that it was the intention of the testator to exclude such particular
interest or estate from the residuary gift."

Again, in *Smith* v. *Smith et al.* (141 N. Y. 29) the court says
(p. 34), referring to the above rule : " The rule should have full effect
unless the testator by the language he uses manifests a plain inten-
tion to curtail its operation."

By the so-called residuary clause contained in the paragraph
immediately following the devise to her daughter " during her life,"
the testatrix goes on to say : " I further give and bequeath to her all
my jewels, pictures, ornaments, books, household furniture, and all
other property of whatsoever kind or nature, *not hereinbefore made
mention of*, absolutely and forever." If the estate in remainder of
all of the realty of the testatrix was thereby intended by her to be
devised to her daughter, it can only take effect by assuming that it
was property " not hereinbefore made mention of."

The learned counsel for the defendant Nicholas Toerge contends
with much earnestness and considerable ingenuity that, as only a
life estate had been previously " made mention of," the testatrix
must have had in her mind the estate in remainder which she had
not " made mention of," and that she intended that those words
should be construed as referring to such estate in remainder.

To sustain this contention would require the will to read substan-
tially as follows : " I give to my daughter during her life the houses
and lots known by such and such street numbers, and I further give
my jewels, etc., and said houses and lots to her absolutely and for-
ever." The words " made mention of " are to be construed in their
ordinary and popular sense, and mean and are the equivalent of " to
direct attention to," " to speak briefly of," " to name casually or
incidentally."

It seems to me that the testatrix had " made mention of " her real
property in her will before coming to the so-called residuary clause.
The language of the will, with respect to her real estate, is marked ;
she does not give the " rents and profits " of her real property for
life, nor " the income " for life of, nor " estate for life " in certain
real property. In the bequests to her son John she says : " I give

and bequeath to him, during his life, the following real property, to wit: The house and lot known by the street number 79 on Myrtle avenue, the house and lot known by the street number 81 on Myrtle avenue, the house and lot known by the street number 161 on Court street, all of said houses being situate in the city of Brooklyn, State of New York. Should he, however, die of the disease he is now afflicted with, and shall never have been possessed of the premises aforesaid as hereby provided," etc. In the bequests to her daughter she says: "I give and bequeath to my beloved daughter, Lena Toerge, wife of Nicholas Toerge, during her life the house and lot known by the street number 180 on Amity street in the city of Brooklyn, and the house and lot known by the street number 147 on West street, corner of Barclay, in the city of New York," and until her son recovers, or in case he dies during Lena's lifetime, " I give and bequeath to her during her life the houses and lots Nos. 79 and 81 Myrtle avenue, and the house and lot No. 161 Court street, all in the city of Brooklyn, New York."

In the face of this specific mention of each "house and lot" by its street number, and in addition, the use of the words "following real property" and the "premises aforesaid in the devise to John," I do not think that the testatrix intended to have it assumed that she had not made mention "of her real estate" as real estate, notwithstanding she had only devised a life interest therein.

It seems to me that if the testatrix had intended to include in the devise to her daughter the estate in remainder she would have used the words "not hereinbefore disposed of," or words of similar import to attain that end. It would be a strained construction to say that the words "made mention of" are to be understood as meaning "disposed of;" any such construction would substantially constitute a distribution by the court of the property of the testatrix left undisposed of.

But the words "all other property of whatsoever kind or nature not hereinbefore made mention of" undoubtedly had a meaning and purpose in the mind of the testatrix. I think that her intention is plain and clear, especially when it is borne in mind that this language is immediately preceded by a gift of "all my jewels, pictures, ornaments, books, household furniture and—" The words "all

other property" are, in my opinion, restricted by the context to property of the same general character as that already mentioned.

Jarman on Wills, m. p. 706, lays down the following rule of construction: "Where, however, * * * general expressions stand immediately associated with less comprehensive words, they have been sometimes restrained to articles *ejusdem generis;* the specified effects being considered as denoting the species of property which the larger term was intended to comprise; and this upon a principle evidently analogous to that on which (as we have seen) the words 'estate' and 'property' have been confined to personalty by their juxtaposition with words descriptive of that species of property."

In *Dole* v. *Johnson et al.* (85 Mass. 367) the court cites several English decisions and says that those cases all support the doctrine that where bequests are made by words of enumeration, which are followed in the same clause by collective words or words of general description, the latter may be confined to matters *ejusdem generis.*

In *Hunt* v. *Hunt* (4 Gray, 193) the court says: "When the words 'property' and 'estate' have been held to be limited to personal, we think it has been where there were qualifying words, or where these general terms were so connected or mixed with words expressing only things personal as to limit their meaning."

The evidence herein shows that the testatrix died possessed of $3,000 in cash, certain furniture, etc., appraised in the inventory of her estate at $746, and certain bonds and notes appraised at $6,200. Out of this personal property the testatrix bequeathed $4,000 to the wife of her son John in case she survived him, and three legacies of $200 each to various friends; no disposition was made of the balance of her personal property, nor was it " made mention of," and I think that this balance was what the testatrix had in mind and intended to bequeath to her daughter when she gave in addition to her jewels, etc., " all other property of whatsoever kind or nature not hereinbefore made mention of," and the language was made broad enough to include cash, bonds, notes and the legacy to John's wife in case it lapsed.

I am accordingly of the opinion that the testatrix made no devise of the reversion or estate in remainder of her real estate on the expiration of the life estate therein given to her son and daughter,

but that she died intestate in regard thereto; that one undivided half of such reversion or estate in remainder descended to her son, John Neiheisel, the other one undivided half to her daughter, Lena Toerge; that on the death of said Lena Toerge, her undivided half passed under her will to her husband, the defendant Nicholas Toerge, and that on the death of John Neiheisel, his undivided half passed in equal shares to his nephews, his only heirs at law, the plaintiff, George William Toerge, and the defendant Edward P. Toerge.