## Matter of the Construction of the Will of DANIEL HUNT, Deceased.

(Surrogate's Court, Westchester County, June, 1921.)

Wills — construction of — residuary estate — particular residue — intention.

Upon the death of the decedent, who had been the life tenant of the residuary estate of his brother, the residuary estate was devised and bequeathed to decedent's two sons and three daughters share and share alike. Both of the sons survived their father but the daughters died in the following order: H. died intestate, unmarried and without issue, leaving her surviving her father as her only heir at law; L. died intestate, leaving her only child, a son, who died intestate leaving him surviving as his only heir at law, his father, and C., the remaining daughter, died intestate leaving a son, her only child. The first paragraph of the will of decedent recited that whereas the son of L. and the son of C. will "upon my death, be each entitled to one-fourth of the property devised and bequeathed by the will of my brother * * * to me for life, with

remainder to my children; and, whereas, my two sons are living and working with me and helped me to accumulate my property, I have omitted in this my will to further provide for the two grandsons."

*Held*, that the second paragraph of the will, which provided that "all property real, personal or mixed, wheresoever situated, which at the time of my death may belong to me or be subject to my disposal by will, I give, devise, and bequeath unto my two sons * * * absolutely, equally, to be divided between them," created and dealt with a particular residue of all of his property, exclusive of any interest accumulated and acquired by him in his lifetime, such intention appearing from other parts of the will. As to the one-fifth interest of decedent in his brother's estate, which he inherited from his daughter H., decedent died intestate, and such interest passed to the son of C. and the two surviving sons of decedent in equal shares, and the son of L. having predeceased his grandfather, his father acquired no interest in any part of the estate of the decedent herein.

PROCEEDING upon the construction of a will.

Arthur R. Wilcox, for petitioners.

Austin K. Griffen (Thomas Holden, of counsel), opposed.

SLATER, S. Petitioners seek construction of the will of Daniel Hunt. The will is a short one, and I will recite it in full:

"I, Daniel Hunt, of the town of Harrison, do make, publish and declare this my last will and testament.

"*First*. Whereas, my grandchildren Albert Bell, Jr., and Raymond Chandler, will, upon my death, be each entitled to one-fourth of the property devised and bequeathed by the will of my brother, Harrison Hunt, to me for life, with remainder to my children; and, whereas, my two sons are living and working with me and helped me to accumulate my property, I have-

omitted in this my will to further provide for the two grandsons.

"*Second.* All property real, personal or mixed, wheresoever situated, which at the time of my death may belong to me or be subject to my disposal by will, I give, devise, and bequeath unto my two sons, Hobart Park Hunt and Harrison G. Hunt, absolutely, equally, to be divided between them.

"*Third.* Should my sons or either of them die before me, leaving descendants, then I give, devise and bequeath the share of my son so dying to his descendants, per stirpes and not per capita.

"*Fourth.* Should either of my said sons die without leaving issue at the time of my death, then I give, devise and bequeath the share of the one so dying to his surviving brother.

"*Fifth.* I hereby appoint my said sons executors of this my will, and direct that no security be required of them in any jurisdiction for the faithful performance of their duties as such executors.

"*Sixth.* I hereby revoke all former wills by me made."

It appears that one Harrison Hunt, brother of said Daniel Hunt, died in 1888 leaving a will probated in this court, under the provisions whereof he gave the use of all his residuary estate to his brother, Daniel, for life, and " on his death I bequeath and devise the principal thereof to his children, share and share alike." The amount of Harrison Hunt's estate is about $75,000. Daniel Hunt had five children as follows: First, Cecelia Hunt Chandler, who died August, 1919, intestate, leaving Raymond Francis Chandler, one of the petitioners herein, her only child; second, Laura Hunt Bell, who died in 1917 intestate, leaving John Albert Bell, Jr., her only child, who died intestate in 1919, leaving him surviving as his only heir

at law his father, John Albert Bell, one of the peti-
tioners herein; third, Hattie Hunt, who died in 1896,
intestate, unmarried and without issue, leaving her
surviving her father, said Daniel Hunt, her only heir
at law; fourth, Hobart P. Hunt, still living; fifth,
Harrison G. Hunt, still living.

Two questions are raised as to the share in Harrison
Hunt's estate which passed to Daniel Hunt upon the
death of his daughter Hattie Hunt. The petitioners
claim either that a gift resulted by implication as to
the one-fifth interest which descended from Hattie
Hunt to her father, Daniel, in favor of the petitioners,
or that Daniel Hunt died intestate as to this particular
one-fifth interest.

It is the court's duty to examine the will with care
to see whether, by any reasonable construction, of
which his words are fairly susceptible, it can spell out
the intention of the testator. Judge Cardozo in *Matter
of Buechner,* 226 N. Y. 440, 444, in construing a will,
says: " We need no canon of construction to justify
that holding except, indeed, the primary one, to which
all others are subordinate, that the intention of the
testator is to be sought in all his words, and when
ascertained, is to prevail." Citing *Robinson* v. *Martin,*
200 N. Y. 159, 164; *Malarky* v. *Sullivan,* 136 N. Y. 220-
232. Words are never to be rejected as meaningless
or repugnant if by any reasonable construction they
may be made consistent and significant. *Adams* v.
*Massey,* 184 N. Y. 62, 69.

Is there light enough in the will to guide the court
in ascertaining the intention and in endeavoring to
preserve it? While it is true that courts from an
early day have repeatedly upheld devises or bequests
by implication, I find that the weight of authority
sustains the position that the implication to be effec-
tive must be supported by some words of gift, and

that a gift by implication will not result from words such as found here. *Bradhurst* v. *Field,* 135 N. Y. 564; *Smith* v. *Dugan,* 145 App. Div. 877; affd., 205 N. Y. 556. In the instant case the clause contains no words of gift, nor any indication that the testator intended to effect a devise thereby. To hold otherwise would be doing violence to the language of the will. This point is not tenable.

As to the question of partial intestacy, the respondents urge that the second paragraph, which may be called the residuary clause, is broad and ample under the rule laid down in *Floyd* v. *Carow,* 88 N. Y. 560, to carry all of the property owned by the decedent at his death. The intention to include is presumed, and an intention to exclude must appear from other parts of the will, or the residuary devisee will take.

Upon a reading of the whole will it is not clear to my mind that the testator had the intention of making the respondents his general residuary beneficiaries. It is the court's judgment that his intention was to make them beneficiaries of a particular residue, although not defined in the second paragraph of the will, but which may be identified by reference to the context of the whole will. The intention of the testator must govern and all the technical rules of construction must yield. The fundamental rule of construction relating to intestacy must give way to testator's intention. *Matter of James,* 146 N. Y. 78; *Matter of Disney,* 190 id. 128. What was the intention of the testator and can that intention be sufficiently declared from the language of the will? However strict the technical rule of construction may be that the legacy will be deemed general rather than specific, it must yield to the one which is the foundation of all interpretations of wills, that the intention of the testator must govern. *Cramer* v. *Cramer,* 35 Misc. Rep. 17.

Surrogate's Court, Westchester County, June, 1921.    [Vol. 116.

The rule of presumption against intestacy is not a controling guide to testator's intention. *Raymond* v. *George, Junior, Republic Assn.,* 82 Misc. Rep. 507, 513, and cases cited. Where the presumption against partial intestacy is in conflict with the presumption against disherison (*Close* v. *Farmers' Loan & Trust Co.,* 195 N. Y. 92, 100) the weaker must prevail. As stated by Haight, J., the rule to the effect that the testator did not intend to die intestate " has many exceptions and is only occasionally followed." *Matter of Disney, supra; Matter of Werlich,* 230 N. Y. 516, 520.

I believe it is manifest from the expressed words of the will that a gift of the residue is confined to the residue of a particular fund and the effect of the 1st paragraph is to limit the 2d paragraph; that the words used in the 1st paragraph show a clear intention to exclude such portion of his property as came to him from his brother's estate, through his daughter, Hattie Hunt. Cases are numerous which sustain the doctrine that, where the language of the will giving the residue is confined to a particular fund, or to a certain residuum, it will be restricted accordingly. The general rule that the residuary bequest carries everything with it, is subject to some qualifications and its exceptions. *Ommanney* v. *Butcher,* Turn & Russ. 260; *Riker* v. *Cornwell,* 113 N. Y. 115; *Morton* v. *Woodbury,* 153 id. 243; *Kerr* v. *Dougherty,* 79 id. 327; *Toerge* v. *Toerge,* 9 App. Div. 194; *Floyd* v. *Carow,* 88 N. Y. 560; Jarman Wills, 726; *Matter of Benson,* 96 N. Y. 499, 508; *Decker* v. *Hoag,* 101 Misc. Rep. 474, 478. While the language of the second provision does not dispose of all the rest, residue and remainder of the estate, the words used are of sufficient import to carry all his estate, unless limited by other provisions of the will.

Misc.]    Surrogate's Court, Westchester County, June, 1921.

The first provision of the will of Daniel Hunt speaks entirely of the property in which he enjoyed a life estate. Apparently he did not know that he had acquired a one-fifth interest therein as the result of the death of his daughter, Hattie Hunt, because the paragraph states that his grandchildren will be each entitled to one-fourth of the property devised and bequeathed by the will of his brother. He settled in his mind the fact that each grandchild would enjoy one-fourth part of an estate worth in all about $75,000. Then he makes the formal statement that his two sons are living and working with him and helped him " to accumulate *my* property," and further states, because of the fact that the grandchildren would inherit each one-fourth part of the property in which he had a life estate, that he has omitted to " further provide " for them. Daniel Hunt made more than a bare recital. He made an explanation. In the 1st paragraph he refers entirely to the life estate, and, when he disposes of that to his satisfaction, he proceeds to take up in the 2d paragraph, and make disposition of his own property, property acquired by his own efforts and exertions in his lifetime with the aid of his two sons. He treated the life estate property as distinct and apart from his own acquired property. The two sons did not help him acquire the one-fifth interest in his brother's estate, which he had inherited from his daughter Hattie. Therefore, a fair reading of the 1st paragraph of his will causes the 2d clause to create a special residue of so much of his estate as he acquired in his own lifetime. The authority strongly relied on by respondents is *Smith* v. *Dugan*, 145 App. Div. 877; affd., without opinion, 205 N. Y. 556. That case is clearly distinguishable from the one at bar. as will be seen from the reading of the wills in question. If the court fails to convince upon this point, then it

must meet reversal.  In *Smith* v. *Dugan,* Andrew Smith died without issue and it was claimed that, although he took a vested remainder, of which he was apparently ignorant, the recital in the will excluded the two houses and lots from the residuary clause, but the court held otherwise.  In that case the reference to the prior gift from the father was simply a bare recital.  Andrew Smith could not have known at the time of the making of his will that at the time of his death he would have no children.  Any recital or statement before the happening of the event of his death would obviously be of no consequence.  There was no sufficient statement, nor inference to be drawn, excluding the real estate from the residuary estate. His recital does not include an explanation.  In the instant case, we have more than a bare recital.  Daniel Hunt states the effect of his brother's will and then he designates the beneficiaries by name, and their precise interests, and, because they will take such an interest and are provided for, he makes no " further provision " for them.  This paragraph deals entirely with the property constituting the Harrison Hunt estate and no other property, and disposes of it once and for all as Daniel Hunt thought, although perhaps mistakenly.  He treats it apart from his property as though it were a duty for him to do so.  He gives as a reason for giving his own property to his two sons that they helped him to accumulate it, but they did not help him to accumulate the one-fifth interest of Harrison Hunt's property.  The 1st paragraph is my warrant for my interpretation of the intention of the will maker.  In its entire thought we find the purpose to do justice to all the objects of his bounty.  The reference to the interest he thought would pass to the grandchildren under his brother's will leads to the conclusion that he thought such an interest was ample

Misc.]    Surrogate's Court, Westchester County, June, 1921.

for them, and he thought such interest to be each one-fourth part. He had concern for the issue of his blood and it is fair to believe that he would have made different provision for them were they not secure in his brother's inheritance. In fact, he says so, because he makes no " further provision " for them. Having made reference to his brother's gifts, he turns to a full disposition of the property he acquired by his own labors.

Therefore, I conclude that the 2d paragraph of the decedent's will created and dealt with a particular residue, namely, all of the property of Daniel Hunt, exclusive of any interest accumulated and acquired by him in his lifetime, and the intention to do so appears from the other parts of the will; that he died intestate as to the one-fifth interest in his brother's estate, so that it passed to one of the petitioners herein, Raymond Francis Chandler, and the decedent's two sons, Hobart P. Hunt and Harrison G. Hunt, each acquiring one-third interest therein. The grandson, John Albert Bell, Jr., predeceased Daniel Hunt, and, therefore, his father, John Albert Bell, acquired no interest in any part of the estate of the late Harrison Hunt, deceased. Such an interpretation of the will, judged by the testator's own words, would be both natural and consistent with his desires and his life relations with his grandchildren.