ROBERT B. HULL and Others, as Executors of and Trustees' under the Last Will and Testament of JOSEPH WILD, Deceased, Respondents, v. CHARLES PEARSON and Others, Respondents, Impleaded with NEW YORK BAPTIST UNION FOR MINISTERIAL EDUCATION, Appellant.

*Subscription — the continuance of work in one of the departments of a seminary not presumed to be at the subscriber's request — effect of the payment of a part of the amount subscribed.*

The president of a theological seminary, in making an appeal for assistance for the German department of the seminary, stated that the "English department of the seminary, having its own heavy burdens, cannot any longer make up this deficit, and a great curtailment, if not an absolute close, of the German work is threatened if money from other sources cannot be obtained," and annexed to such appeal the following: "Subscription. We, whose names are here subscribed, promise to pay, within six months from the time of our subscription, the sum set opposite our names, to Professor H. M. Schaffer, for the work of the German Department of the Rochester Theological Seminary in training young men for the gospel ministry."

*Held,* that the mere fact that the German department, which had been in existence for forty-one years before the appeal was made, was continued after one Joseph Wild had signed the subscription as follows: "Jos. Wild, $5,000," raised no presumption that such continuance was in pursuance of a request made by Wild;

That the fact that Wild paid $1,000 of his subscription before his death did not create a liability upon the part of his estate for the remaining $4,000, in the absence of evidence that the corporation maintaining the seminary had made any change in its plans involving new duties and obligations based upon the subscription as a whole.

APPEAL by the defendant, the New York Baptist Union for Ministerial Education, from so much of a judgment of the Supreme

Court in favor of the plaintiffs and certain of the defendants, entered in the office of the clerk of the county of Kings on the 30th day of July, 1898, upon the report of a referee, as disallows and dismisses the counterclaim interposed by said defendant.

The action was brought to obtain a judicial construction of certain provisions contained in the will of Joseph Wild, deceased, and for the settlement of the accounts of the plaintiffs, as executors of and trustees under such will.

*Thomas B. Brown, Jr.,* for the appellant.

*James C. Foley* and *Henry G. Atwater,* for the respondents.

WOODWARD, J. :

Joseph Wild, late of the city of Brooklyn, departed this life on the 3d day of September, 1896, leaving a last will and testament, bearing date November 16, 1894, with codicils; and this will and codicils were duly admitted to probate. Robert B. Hull, Charles H. Dutcher and Henry A. Powell were named as executors and trustees of the trusts created by the will. The will in question provided for a legacy of $10,000 for the defendant the New York Baptist Union for Ministerial Education, a domestic corporation, and the said Baptist Union interposed a counterclaim demanding $4,000, the balance of an alleged subscription of $5,000 made by the plaintiffs' testator. The referee before whom the case was tried dismissed the counterclaim, and the question is presented on this appeal whether the alleged subscription was valid in law, the facts being practically undisputed.

The chief agency, it seems, of the New York Baptist Union for Ministerial Education is the institution known as the Rochester Theological Seminary. This seminary has two departments, known as the English department and the German department. In April, 1895, the president of the theological seminary undertook to raise funds for the purpose of supporting especially the German department, and to this end wrote in a little book an appeal for assistance for the German department of the Rochester Theological Seminary, addressed to the general public, as well as to members of Baptist churches, giving some details as to the work of the department, and stating that it had been insufficiently endowed; that there had been an annual deficit of some $5,000, which the English department of

the seminary, having its own heavy burdens, could not any longer make up, and further stating that Professor E. M. Schaffer had been deputed to solicit subscriptions from those generously disposed, and that all money paid to him would be properly accounted for and would go to the training of men who would preach the gospel to the Germans in this country. This appeal was signed, not by the president of the corporation, but by the president of the theological seminary, and following this were the words, written in ink:

"Subscription. We, whose names are here subscribed, promise to pay, within six months from the time of our subscription, the sum set opposite our names, to Professor H. M. Schaffer, for the work of the German department of the Rochester Theological Seminary in training young men for the gospel ministry.

"ROCHESTER, *April* 3, 1895."

There were numerous names, with amounts, signed to this subscription, and after a number of blank pages there appears the name of "Jos. Wild, $5,000," and the referee concludes, properly, we believe, that this was intended as a subscription to the pledge contained in the front part of the book. That there is no consideration expressed in the memorandum is too evident for serious discussion; and the law is well established that a mere executory contract, without consideration, cannot be enforced against the donor, or against his executors or administrators. (*Matter of James*, 146 N. Y. 78, 93.) It is urged, however, that there was in this case an implied request on the part of Joseph Wild that the appellant should continue the German department, and that this having been done there is a sufficient consideration to sustain the promise. In support of this contention evidence was introduced showing the circumstances under which the subscription was made. The facts established show that Professor Schaffer, who has since died, visited Mr. Wild; that he discussed with him the situation of the seminary, and particularly the German department, and that Mr. Wild caused the appeal in the book to be read, as well as the subscription, and that, while he expressed a hope that the German department, and particularly the chair of Biblical literature, would not be discontinued, he declined at that time to subscribe anything. The principal talk at this time was in reference to an endowment of the chair of Bibli-

cal literature, and Mr. Wild agreed to give one-half of the necessary $20,000 if Professor Schaffer would collect the other half from friends who were mentioned. Professor Schaffer made no promise that he would make such an effort, and the only meeting of which there is any evidence other than the signature to the subscription came to an end without any definite result. Subsequently Professor Schaffer told Dr. Hull, one of the plaintiffs, that Mr. Wild had promised to contribute $5,000, as appears from the subscription list. We look in vain in the records for any evidence of a request on the part of Mr. Wild that the Rochester Theological Seminary or its principal should continue the German department, or for any evidence of an expenditure on the part of the New York Baptist Union for Ministerial Education predicated upon such request. It is true that there is evidence that the German department has been continued, but this does not meet the requirement; there is no evidence that it would not have been continued, as it had been for a series of years, if the subscription of Mr. Wild had not been made.

Giving the largest possible effect to the appeal contained in the subscription book, as showing the situation of the German department, and the implied request, it fails to disclose any intention on the part of the appellants to close the department or even to curtail it at any given time. The language is that the "English department of the seminary, having its own heavy burdens, cannot any longer make up this deficit, and a great curtailment, if not an absolute close, of the German work is threatened if money from other sources cannot be obtained." It is only threatened that the German department may be curtailed or discontinued; and the mere fact that the work has been continued, after an existence of forty-one years, raises no fair presumption that Mr. Wild made any request whatever in respect to the conduct of the affairs of the institution. He undoubtedly made the subscription for the purpose of aiding in promoting the work of the German department; but, in the absence of some act or word which clearly indicated that he accompanied his subscription by a request to do something which the corporation would not have done except for his subscription, there is no such request as would justify a constructive consideration in support of this promise. In the case of *Bridgewater Academy* v. *Gilbert* (2 Pick. 579) the subscription on which the action was brought was as follows: "We,

the subscribers, being desirous that the academy edifice should be rebuilt immediately, do hereby promise to pay to the committee which may be chosen by the trustees of the B. Academy the sums set opposite our names for the above purpose." The edifice was rebuilt. The court held " that the subscription paper would not sustain the action. That providing materials upon the faith of the subscription was not sufficient to show that the expenses were incurred at the implied 'request of the defendant." As was said in the case of *Trustees of Hamilton College* v. *Stewart* (1 N. Y. 581, 585): " If a request could not be inferred from that paper, it is impossible to say that it can be implied from the one under consideration." In the case of *M'Auley* v. *Billenger* (20 Johns. 89) a committee was appointed at a church meeting to receive subscriptions and to contract for the repairs to the church; and while the form of the subscription is not given, the court held that the consideration for the defendant's promise was the repairing of the church, and that the defendant, by signing the paper, sanctioned the acts of the meeting which had directed the repairs and authorized the subscription, this being, in the opinion of the court, equivalent to a request to the committee to make repairs, in consideration of which the defendant undertook to pay. In the *Hamilton College Case* (*supra*) the subscribers agreed to pay the sums set opposite their names to the trustees of Hamilton College for a fund to provide for the payment of salaries, stipulating that " we shall not be holden to pay the sum subscribed by us unless the aggregate of our subscriptions and of contributions to this object shall, by the 1st of July, 1834, amount to $50,000," etc. In that case the court say : " The trustees are made, by the subscription, the mere depositories of the money, and nothing more. If any other person had been designated, the agreement would have been as effectual for all the purposes contemplated as in its present form. There certainly is no express request to the plaintiffs, or the trustees as their representatives, to procure subscriptions or contributions. Nor can a request be implied from the agreement. The endowment of the college was, in legal contemplation, no benefit to the subscribers. The public advantage arising from the diffusion of knowledge and the advancement of science, however important in themselves, have not been held a sufficient consideration alone to uphold an agreement of this character.

(2 Pick. 580.) We cannot, therefore, imply a request from the beneficial nature of the services to the subscribers. Nor is it to be inferred from the object to be obtained by the subscription. The purpose, as stated by the plaintiffs in their declaration, ' was to endow the institution by providing a fund for the payment of its officers.' In effect, it was to add $50,000 to the permanent funds of the college without abstracting any thing from those already accumulated. How, then, are we authorized to imply a request by the subscribers that the plaintiffs should, as they allege, ' at great labor and expense,' procure those subscriptions?" The court refused to sustain the subscription, and the doctrine of the law has not been changed since that time. In the case of *Barnes* v. *Perine* (12 N. Y. 18), where the defendant was held liable upon a subscription, it was in evidence that the defendant, with others, subscribed a paper by which he promised to pay a given amount toward the sum of $5,000, to be expended in the erection of a new Presbyterian church in the place of the old one to be removed; and that he afterward attended and took part in several meetings of the society, as well as of the individual subscribers to the building fund, at which a building committee was appointed, and resolutions were adopted imposing certain duties and obligations upon the trustees and building committee, involving labor and expense, and the necessity of incurring obligations in behalf of the corporation, in furtherance of the design of removing the old building and erecting the new. Under these circumstances, the court very properly held that there was an implied request on the part of the defendant that the plaintiffs should do these acts, and that the performance of these imposed duties was a sufficient consideration for the promise. The case at bar is not distinguishable, in any material aspect, from that of *Presb. Church of Albany* v. *Cooper* (112 N. Y. 517, 522), where the court say : "But the plaintiff encounters the difficulty that there is no evidence, express or implied, on the face of the subscription paper, nor any evidence outside of it, that the corporation or its trustees did, or undertook to do, anything upon the invitation or request of the subscribers. Nor is there any evidence that the trustees of the plaintiff, as representatives of the corporation, in fact did anything in their corporate capacity, or otherwise than as individuals interested in promoting the general object in view."

It seems proper to consider the question whether the payment of a portion of this subscription operated in any manner to change the legal aspects of the case. It is conceded that the original subscription was for $5,000, and that $1,000 had been paid, and it will not be questioned that if the appellant had made any change in its plans, involving new duties and obligations, based upon the subscription as a whole, this payment would have operated to ratify and confirm the subscription. The difficulty is that there is no evidence of any action on the part of the corporation based upon this subscription. In the case of *Central Presbyterian Church* v. *Thompson* (8 App. Div. 565) the defendant signed an agreement to pay $100 per year for five years " toward the purchase of land and the erection of a new auditorium, and such improvements as you have contemplated." The defendant paid $200 on account of this subscription, the trustees of the church meanwhile collecting the other subscriptions and purchasing the property, and proceeding to erect the church. The court held that the defendant was liable for the balance of the subscription, and the court reached the same conclusion in the case of *Trustees of Farmington Academy* v. *Allen* (14 Mass. 172), where it was held that a partial payment was evidence of an implied request to the trustees to expend money in the building of the academy. In all of these cases, however, it has been in evidence that the plaintiff has expended money for definite purposes, and in a manner which it would not have done except upon the faith of the subscriptions, while in the case at bar there is no evidence except of the financial condition of the German department, accompanied by a suggestion that the department may be curtailed or abandoned at some future time if money is not secured. There is no evidence of any change of policy ; no evidence that a single dollar has been expended which would not have been expended except upon the faith of the subscription of Mr. Wild, and we are forced to conclude from the facts found by the referee that the conclusion of law flows necessarily from such facts, and that the judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.